**MERCHO–ROUSHDI–SHOEMAKER–DILLEY–THORACO–VASCULAR CORPORATION, et al., Appellants, (Defendants and/or Counter–Plaintiffs),**

v.

**James W. BLATCHFORD III, M.D., Eve G. Cieutat, M.D. and Cardiothoracic Surgical Associates of the Wabash Valley, L.L.C., Appellees, (Plaintiffs and/or Counter–Defendants).**

No. 84A05–0008–CV–356.

Court of Appeals of Indiana.

Jan. 18, 2001.

---

Thomas A. Withrow, Debra A. Mastrian, Kerry L. Wagner, Henderson, Daily, Withrow & DeVoe, Indianapolis, Indiana, Eric A. Frey, Terre Haute, Indiana, Attorneys for Appellants.

Michael B. McMains, Matthew W. Foster, John J. Morse, Jana K. Strain, McMains, Foster, Jinks & Morse, P.C., Indianapolis, Indiana, Peter Sacopulos, Sacopulos, Johnson, Carter & Sacopulos, Terre Haute, Indiana, Attorneys for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Mercho–Roushdi–Shoemaker–Dilley–Thoraco–Vascular Corporation ("MRSD") brings this interlocutory appeal of the trial

court's denial of its motion for preliminary injunction that sought to enjoin Doctors James W. Blatchford III ("Dr.Blatchford") and Eve G. Cieutat ("Dr.Cieutat") from violating the non-competition clauses in their respective shareholder and employment agreements.[1]

We affirm.

## ISSUE

Whether the trial court erred in denying MRSD's motion for preliminary injunction.

## FACTS

The facts most favorable to the judgment reveal that MRSD is a physician group practice incorporated in Indiana providing cardiovascular medical services in Indianapolis and Terre Haute. MRSD employs an administrative staff, surgeons, nurses, and perfusionists[2] to provide cardiovascular surgical teams at Union Hospital and Terre Haute Regional Hospital ("Regional Hospital"). MRSD is the sole provider of cardiovascular surgical services in Vigo County.

Doctors John P. Mercho ("Dr.Mercho") and Hussein A. Roushdi ("Dr.Roushdi") are founding shareholders. Doctors Robert E. Shoemaker ("Dr.Shoemaker"), Russell S. Dilley ("Dilley"), Dennis M. Jacob ("Dr.Jacob"), and David K. Evans ("Dr.Evans") are the remaining shareholders. All are physicians licensed to practice medicine in Indiana. The Articles of Incorporation provide for two classes of stock: (1) class A voting shares and (2) class B non-voting shares. Drs. Mercho and Roushdi each own 200 shares of class A voting stock and 100 shares of class B non-voting stock; the other doctors each own 25 shares of class A voting stock and 100 shares of class B non-voting stock.

Doctors Blatchford and Cieutat are married and are also licensed to practice medicine in Indiana. They are surgeons specializing in thoracic, vascular, and cardiovascular surgery. Drs. Blatchford and Cieutat were recruited by MRSD. On November 7, 1994, both signed employment agreements with MRSD. Prior to signing the agreements, the doctors had no ties to Indiana or MRSD. The agreements were subject to the "Indiana Medical Professional Corporation Act and the applicable rules of professional ethics." (R. 433). They specifically addressed the procedure for terminating employment, employee covenants, and a conditional option for stock purchase.

For example, MRSD was required to give ninety (90) days written notice before terminating an employment agreement. No notice was required if either Drs. Blatchford or Cieutat lost their medical license, was suspended from practicing medicine, or suffered death or total disability. If the doctors wished to terminate the agreement, written notice of 180 days was required. Further, the employment agreements also contained a covenant of loyalty and non-competition clause. Finally, the agreements provided a conditional option to purchase shares after the completion of three and one-half years of employment.

During their employment, Drs. Blatchford and Cieutat resided and rendered surgical services primarily in Vigo County. The doctors expected to become shareholders in MRSD during the summer of 1998. When their expectations were not met, Drs. Blatchford and Cieutat met with various other doctors and Jerry Dooley, the chief operating officer of Regional Hospital. Drs. Blatchford and Cieutat stated that they did not believe they would

---

1. On December 14, 2000, oral argument was heard. We would like to thank the parties for their presentations.

2. Perfusionists operate the heart and lung pumps during open-heart surgery. The perfusionists are provided through Indiana Perfusion Services, an Indiana corporation whose shares are owned by Dr. Mercho. Indiana Profusion Services is the only provider of profusionists in Vigo County and provides its services through contracts with Regional and Union Hospitals in Terre Haute.

become partners at MRSD and discussed whether it would be feasible to establish their own cardiovascular practice. During November 1998 and without notice to Drs. Blatchford and Cieutat, MRSD added Doctor Nabil Mnayarji ("Dr.Mnayarji") to the Terre Haute practice, and, in December 1998, Drs. Blatchford and Cieutat incorporated an entity named Cardiothoracic Surgical Associates of Wabash Valley ("CSA").

In January 1999, Drs. Blatchford and Cieutat began negotiating a partnership agreement with MRSD. On January 22, 1999, the doctors signed an Amended and Restated Stock Transfer Agreement retroactive to June 15, 1998, making them partners in MRSD. Drs. Blatchford and Cieutat purchased 25 shares of class A voting stock and 100 shares of class B non-voting stock. They were also elected and qualified to serve on MRSD's board of directors. The stock purchase agreement also contained a non-competition clause. The relevant portion reads as follows:

> (c) For a period of three (3) years after a Shareholder ceases to be a Shareholder, no Shareholder shall engage directly or indirectly, in the rendition of thoracic, vascular or cardiovascular surgical services within the two (2) areas contained in circles drawn with a radius of fifty (50) miles of the center of Monument Circle in Indianapolis, Indiana and of the center of the Court House of Terre Haute, Indiana. Each Shareholder specifically acknowledges and confirms that the foregoing provisions of this paragraph 9 relating to the three (3) year period following the date any Shareholder ceases to own stock in the Corporation are reasonable, both in geographic area and in scope and are necessary in order to protect the business of the Corporation. Each Shareholder further acknowledges and confirms that such provisions are equitable since, in the event of such termination, he would not be

restricted from practicing thoracic cardiovascular surgical services outside of such geographic areas. In addition, each Shareholder agrees that the foregoing provisions of this paragraph 9 may be enforced in accordance with the provisions of paragraph 11 hereof.[3]

(R. 115–116).

On January 22, 1999, they also signed new employment agreements. The new agreements were also subject to "the Indiana Medical Professional Corporation Act and the applicable rules of professional ethics, . . . ." (R. 139). While the Agreements remained substantially unchanged, there were changes in the salary, termination, and employee covenant provisions. As partners and directors, the doctors would now share in MRSD's profits. Termination of the employment agreement by either party now required only a written 30 day notice for Dr. Blatchford and a written 60 day notice for Dr. Cieutat. The relevant portion of the non-competition provision read as follows:

> (iii) For a period of three (3) years after termination of this Agreement, the Employee shall not engage directly or indirectly, in the rendition of thoracic, vascular or cardiovascular surgical services within the two (2) areas contained in circles drawn with a radius of fifty (50) miles of the center of Monument Circle in Indianapolis, Indiana and of the center of the Court House of Terre Haute, Indiana. In addition to the geographic areas set forth in the preceding sentence, if during the term hereof the Corporation shall establish a medical practice in Vincennes, Indiana, for a period of three (3) years after the termination of this Agreement, Employee shall not engage directly or indirectly in the rendition of thoracic, vascular or cardiovascular surgical services within an area contained in a circle drawn with a radius of fifty (50) miles of the center of the

---

**3.** Paragraph 11 grants MRSD the right to seek injunctive relief to prevent a breach of the purchase agreement.

Court House of Vincennes, Indiana. The Employee specifically acknowledges and confirms that the foregoing provisions of this paragraph 8 relating to the three (3) year period following the termination of the Employee's employment with the Corporation are reasonable, both in geographic area and in scope and are necessary to protect the business of the Corporation. The Employee further acknowledges and confirms that such provisions are equitable since, in the event of such termination, [he or she] would not be restricted from practicing thoracic cardiovascular surgical services outside of such geographic area. In addition, the Employee agrees that the foregoing provisions of this paragraph 8 may be enforced in accordance with the provisions of paragraph 10 hereof.[4]

(R. 143).

Subsequently, the relationship between Drs. Blatchford, Cieutat, and Dr. Mnayarji became hostile. On several occasions, Dr. Blatchford referred to Dr. Mnayarji as "Satan," and the parties took extraordinary steps to avoid each other. Drs. Blatchford and Cieutat felt that Dr. Mnayarji rendered medical services that were below an acceptable standard of care.

On November 1, 1999, an unauthorized "executive committee" composed of Drs. Mercho, Roushdi, Shoemaker, and Dilley met to discuss the employment status of Dr. Blatchford. They took a vote and drafted a letter terminating Dr. Blatchford's employment and salary benefits effective December 1, 1999. The letter stated that MRSD would honor the terms of the Agreement and hoped that Dr. Blatchford would honor the employee covenants.

On December 2, 1999, Dr. Cieutat submitted her letter of resignation to MRSD. The letter stated that she was resigning because MRSD had repeatedly refused to address the quality of care issues surrounding Dr. Mnayarji and that its failure would cause her continued employment to violate the rules of professional ethics. Currently, Drs. Blatchford and Cieutat provide cardiovascular surgical services in Terre Haute through CSA.

On December 2, 1999, Drs. Blatchford and Cieutat filed a complaint alleging corporate waste, wrongful termination, breach of fiduciary duty, breach of contract, and seeking a declaratory judgment that the employee covenants were unenforceable. On December 7, 1999, MRSD filed its answer, affirmative defenses and counterclaim and a motion for preliminary injunction hearing. As counterclaims, MRSD alleged breach of contract, defamation, tortious interference with a contract, and sought a preliminary injunction to stop Drs. Blatchford and Cieutat from performing cardiovascular surgical services through CSA. MRSD alleged that the existence of CSA violated the non-competition clauses in both the shareholder and employment agreements.

The trial court scheduled a hearing on MRSD's motion for preliminary injunction for January 14, 2000. The trial court heard evidence and continued the hearing until March 23–24, 2000. On March 9, 2000, Drs. Blatchford and Cieutat filed a Motion For Order Referring Case To Mediation. The trial court granted their motion and reset the hearing on MRSD's motion for preliminary injunction for May 18–19, 2000, at which time evidence was heard and the matter concluded.

On July 12, 2000, the trial court entered judgment denying MRSD's motion for preliminary injunction. The trial court found that MRSD had breached its contractual and fiduciary duties to Drs. Blatchford and Cieutat when it (1) hired Dr. Mnayarji without their knowledge and consent; (2) used an unauthorized "executive committee" to terminate Dr. Blatchford's employment; and (3) failed to give the doctors advance notice of MRSD's decision to ter-

---

4. Similar to paragraph 11, paragraph 10 also grants MRSD the right to seek injunctive relief to prevent a breach of the employment agreement.

minate Dr. Blatchford. As a result, these material breaches precluded MRSD from enforcing the employee covenants.

Further, the trial court found that the employee covenants were unenforceable because their geographic and time restrictions were unreasonably broad. Additionally, the court found that because evidence showed that Vigo County is a medically underserved area and that Drs. Blatchford and Cieutat are the county's preeminent cardiovascular surgeons, enforcing the covenants will harm the public interest. Finally, the trial court found that MRSD presented no evidence of irreparable harm because any damage to MRSD could be calculated as a loss of income and profits.

## DECISION

■ We review a trial court's denial of a motion for preliminary injunction for an abuse of discretion. *Ed Bertholet & Associates, Inc. v. Stefanko,* 690 N.E.2d 361 (Ind.Ct.App.1998). Indiana Trial Rule 52(A) requires a trial court to make special findings of fact and conclusions of law. The reviewing court determines whether the trial court's findings support the judgment, and we will not reverse unless the judgment is clearly erroneous. *Hydraulic Exchange and Repair, Inc. v. KM Specialty Pumps, Inc.,* 690 N.E.2d 782 (Ind.Ct. App.1998). "Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment." *Id.* at 785 (citation omitted).

Discretion to grant or deny an injunction is measured by several factors: (1) whether the plaintiff's remedies at law are inadequate, causing irreparable harm pending resolution of the substantive action; (2) whether the plaintiff has at least a reasonable likelihood of success at trial; (3) whether the plaintiff's threatened injury outweighs the potential harm to the defendant resulting from the granting of the injunction; and (4) whether the public interest will be disserved.

*Ed Bertholet & Associates, Inc.,* 690 N.E.2d at 363. However, a preliminary injunction is an extraordinary remedy that should be used sparingly. *Id.* It is the movant's burden to prove each element by a preponderance of the evidence. *Jay County Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.,* 692 N.E.2d 905 (Ind.Ct.App.1998) *trans. denied.*

■ The purpose of a preliminary injunction is to maintain the status quo until the underlying claim is resolved. *Id.*

The necessity of maintaining the status quo is to prevent harm to the moving party which could not be corrected by a final judgment. 'If irreparable injury were to occur during the course of litigation, the judgment, in effect, would be rendered meaningless. Thus, it has been held that an injunction will not be granted where the law can provide a full, adequate, and complete method of redress.'

*Id.* at 909 (quoting *Wells v. Auberry,* 429 N.E.2d 679, 683 (Ind.Ct.App.1982)). Therefore, "a party which suffers only 'mere economic injury' is not entitled to injunctive relief because an award of post-trial damages is sufficient to make the party whole." *Id.* However,

... the trial court has a duty to determine whether the legal remedy is as full and adequate as the equitable remedy. A legal remedy is not adequate merely because it exists as an alternative to an equitable form of relief. Instead, injunctive relief will be granted if it is more practicable, efficient, or adequate than that afforded by law. A legal remedy is adequate only where it is as 'plain, complete and adequate—or in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity.'

*Paul v. I.S.I. Services, Inc.,* 726 N.E.2d 318, 321 (Ind.Ct.App.2000) (citations omitted) (quoting *Jay County,* 692 N.E.2d at 909).

█ In his case, the trial court found in its conclusion number eleven (11):

> Defendants presented no evidence that they face irreparable harm that cannot be remedied with money damages, while Drs. Blatchford and Cieutat presented ample evidence showing that any alleged harm to MRSD is calculable and compensable in dollars and cents. The testimony of Mercho, Roushdi and Goode confirmed, and the Court finds, that MRSD's injuries and damages can be computed with reasonable certainty following a trial on the merits.

(R. 310–311). MRSD argues that the trial court's judgment is clearly erroneous. Specifically, MRSD argues that they presented evidence that their money damages are incalculable because "the nature of the particular damage is *ongoing.*" MRSD Br. at 32. Further, MRSD argues that the evidence shows that it has "suffered damage to its referral relationships," good will, and the reputations of Drs. Mercho and Mnayarji. On the other hand, Dr. Blatchford argues that the evidence supports the trial court's conclusion. Specifically, Dr. Blatchford argues that the evidence shows that the alleged damage suffered by MRSD can be calculated as an economic loss.

We find that the evidence supports the trial court's judgment denying MRSD's motion for preliminary injunction.[5] At the hearing, Dr. Mercho was asked what the effect would be on MRSD if Drs. Blatchford and Cieutat were allowed to continue administering cardiovascular surgical services in Terre Haute. Dr. Mercho stated that MRSD's referral sources would be damaged and that it would "pull at least fifty percent of a number of patients that we have...." (R. 459). Further, Brett Hickman ("Hickman"), a certified public accountant experienced in the valuation of professional medical corporations, testified that the economic impact of Drs. Blatchford's and Cieutat's departure could be measured using historical financial data. "In a situation like this we have both, a financial picture before the situation occurred or event, and we also have a financial picture after the event occurred, thus making the validity of the valuation much stronger." (R. 687). He also testified that all assets, including good will, could be valued.

Additionally, MRSD introduced financial statements marked as defendant's exhibit "Q." Robert Goode ("Goode"), practice administrator for MRSD, testified that the first page of exhibit "Q" was a "comparative statement comparing the first three months accumulative [sic] for the year 2000 compared to the same period for 1999." (R. 761). Concerning cardiovascular receipts in Terre Haute, Goode stated that MRSD recorded $355,252.63 for the first three months of 1999 and $181,739.19 for the same period in 2000. Goode testified that this represented a drop in receivables in Terre Haute of approximately $174,000.00. He projected the loss of income for the first quarter of 2000 to be approximately $205,000. Blatchford also introduced defendant's exhibit "R", records detailing the number of cardiovascu-

---

**5.** We do not reach the merits of this case. However, we note that it is undisputed that two well-educated and highly qualified cardiovascular surgeons entered into what appeared to be a valid contract containing non-competition covenants. The evidence suggests that they had no intention of honoring the contract because they "did not think the covenants would hold." (R. 502). We are mindful that "Indiana courts have long recognized and respected the freedom to contract.

Our supreme court recently re-emphasized a 'very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties. This reflects the principle that it is in the best interest of the public not to unnecessarily restrict peoples' freedom to contract.'" *Eck & Associates, Inc. v. Alusuisse Flexible Packaging, Inc.,* 700 N.E.2d 1163, 1167 (Ind.Ct.App.1998) (citations omitted) *trans. denied; See also Harris v. Primus,* 450 N.E.2d 80 (Ind.Ct.App.1983).

lar surgical procedures performed from December 1, 1999 through April 30, 2000. Again, Goode concluded that these records showed MRSD lost business during the first quarter of 2000.

■ The evidence shows that any damage suffered by MRSD is calculable in economic terms. The testimony of Dr. Mercho, Hickman, and Goode support this finding. Further, the legal remedy in the form of money damages will be "plain, complete, and adequate" at the conclusion of the underlying action because MRSD will have all the necessary data to determine their losses should Drs. Blatchford and Cieutat be found to have breached the non-competition clauses. *Paul,* 726 N.E.2d at 321. For example, Goode testified that his estimate of MRSD's first quarter 2000 losses may be smaller because of delays in collecting receipts. He also stated that it could be larger because MRSD no longer pays certain expenses, such as the salaries of Drs. Blatchford and Cieutat. Additionally, we recognize that MRSD claims that the injuries to the reputations of Drs. Mercho and Mnayarji are qualitative and not quantitative. However, we have already held that damages to a person's reputation in the form of economic loss is properly remedied by money damages. *Daugherty v. Allen,* 729 N.E.2d 228 (Ind.Ct.App.2000) (because the plaintiff solely alleged economic loss as a result of the defamatory falsehoods he is not entitled to injunctive relief, only money damages). Like the plaintiff in *Daugherty,* MRSD has solely alleged economic damages which can be determined with certainty and predictability, he is entitled to only money damages and not equitable relief.

Because MRSD has failed to show its remedy at law would be inadequate, causing irreparable harm, we need not address the remaining three factors required to obtain a preliminary injunction. *Jay County,* 692 N.E.2d 905 (holding that movant must prove all four factors to be successful of motion for preliminary in-

junction). Likewise, when there is an adequate remedy at law, there is no need to consider the merits of a plaintiff's claim. *Indiana State Bd. of Public Welfare v. Tioga Pines Living Center, Inc.,* 575 N.E.2d 303, 306–307 (Ind.Ct.App.1991) *trans. denied.*

Affirmed.

RILEY and ROBB, JJ., concur.