**CROSSMANN COMMUNITIES, INC. and Crossmann Communities Partnership, Appellants–Defendants,**

v.

**Freda R. DEAN, Appellee–Plaintiff.**

**No. 49A02–0110–CV–685.**

Court of Appeals of Indiana.

May 17, 2002.

---

Lante K. Earnest, Robert G. Weddle, Charles R. Whybrew, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, IN, Attorneys for Appellants.

Michael Bullington, Indianapolis, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Crossmann Communities, Inc. and Crossmann Communities Partnership (collectively "Crossmann") appeal from the entry of a preliminary injunction granted in favor of Freda R. Dean.

We reverse the order granting the preliminary injunction, and remand for further proceedings.

### ISSUE

Whether the trial court abused its discretion by entering a preliminary injunction in favor of Dean.

### FACTS

Dean resides at 7159 Mars Drive, Indianapolis, Indiana, in Sungate housing development. Dean reviewed the restrictive covenants for Sungate before she purchased her lot. She was interested in the set-back requirements, fencing, and other matters.

Dean's lot is platted as Lot No. 195. When Crossmann began work on the foundation for the home to be built on Lot No. 196, adjacent to Dean's lot, Dean "noticed how close that it was and it just didn't look right." (Tr. 16). The covenants require that "the minimum side yard set back shall be five (5) feet so as to maintain a minimum distance between primary buildings of ten (10) feet." (Tr. 36).

Crossmann placed the foundation on Lot No. 196 on June 29, 2001. Subsequently, Dean began inquiring about the location of the foundation by telephoning Crossmann in "early August." (Tr. 26). Crossmann maintained that the foundation was properly placed on the lot.

A staked survey of Dean's property and improvements indicated that Dean's home is situated six feet from the property line dividing Lot No. 195 and Lot No. 196. A survey of Lot No. 196, performed by the surveyors and land engineers employed by Crossmann, revealed that the foundation for the home on Lot No. 196 is situated 4.6 feet from the property line on the side adjoining Dean's lot.[1] (Ex. 13). The survey was recorded with the Marion County Department of Metropolitan Development in June prior to placement of the foundation and slab on Lot No. 196. The building permit for the structure on Lot No. 196, dated June 6, 2001, listed Crossmann as the contractor and listed the setbacks for the sides as 4.6 and 5.3 (the same distances listed on the survey).[2] (Ex. 14).

On September 19, 2001, Dean filed her request for a temporary restraining order ("TRO") to prevent Crossmann from continuing to work at the site, after Crossmann had lumber and framing materials delivered to Lot No. 196. Dean posted a TRO bond in the amount of $1,000. The trial court granted the TRO on the same day as Dean's request. Also on September 19, Dean filed her complaint requesting an injunction and damages. A Chronological Case Summary ("CCS") entry for September 19, 2001 states that the trial court approved the TRO and that Dean "WILL UNDERTAKE TO PROSECUTE HER ACTION FILED WITH THIS COURT ... WITH EFFECT AND WITHOUT DELAY, AND WILL PAY ALL COSTS ASSOCIATED THEREWITH NOT TO EXCEED THE AMOUNT OF $1,000 [the amount of the bond]." (App. 2). The trial court set the matter for a hearing on September 27, 2001.

On September 20, 2001, Crossmann filed its motion to dissolve the TRO and its request for attorney's fees attendant to defending the TRO. The trial court set Crossmann's request to dissolve the TRO for a hearing at the same time as the hearing on Dean's complaint for injunctive relief set for September 27, 2001.[3]

1. Dean measured the distance as four and one-half feet. The trial court determined that the foundation is situated 4.7 feet from the side-yard boundary. (App. 6). As noted, the survey placed the foundation 4.6 feet from the boundary with Dean's yard.

2. The permit specifically notes that the property for which a permit is obtained might be subject to regulation through restrictive covenants.

3. Dean's complaint is directed to two properties owned by Crossmann that are adjacent to her lot, Lot No. 196 adjoining at the side yard and Lot No. 175 adjoining at the back yard. At the outset of the hearing held on September 27, 2001, the parties informed the trial court that the proceedings were directed to Dean's request for a preliminary injunction and Crossmann's motion to dissolve the TRO.

During Dean's direct examination at the hearing, Crossmann objected when Dean attempted to testify with regard to the portion of her complaint as to Lot No. 175. Crossmann's counsel stated that he understood that the portions of Dean's complaint not directed to the injunction as to further construction on Lot No. 196 "would be tried at a later date." (Tr. 31). The trial court concurred in that assessment. During arguments at the hearing, in urging that Dean had an adequate remedy at law and had not met her burden as to the elements of a preliminary injunction, Crossmann's counsel stated: "They still have a complaint pending in your court and we can pursue that on lot 175 and lot 196." (Tr. 50). Although in their briefs on appeal the parties do not make any representations whether the hearing on the preliminary injunction and dissolution of the previously granted temporary restraining order effective-

At the hearing, Dean testified that she did not believe Crossmann was entitled to the advantage of or to benefit from her decision to situate her home such that she added one foot of set-back distance to each side of her home, in order to increase the minimum five feet required for side-yard set-backs. She was concerned about drainage issues and fire hazards, once the siding and overhang were placed on the Crossmann home. She urged that money could not make her whole, and that she wanted the foundation removed.

Crossmann did not dispute Dean's evidence that the foundation on Lot No. 196 encroached into the set-back area by four-tenths of one foot. However, Crossmann presented evidence that the overall distance of 10 feet between houses had been accomplished. Crossmann presented additional evidence that 1) the cost of moving the foundation would be between $10,500 and $13,000; 2) in "rough numbers," it had incurred losses of approximately $2,500 to $3,000 from "lost time for the crews" as well as "management, administrative time and supervision time...." (Tr. 57); and 3) Dean did not experience any loss in value of her property due to the encroachment. Although Crossmann maintained that Dean did not sustain an economic loss due to the *de minimis* encroachment into the set-back area, it also maintained that Dean was not entitled to the equitable remedy of a preliminary injunction because any damages that she might have sustained were susceptible of determination at law through monetary damages.

After having heard the evidence on September 27, 2001, the trial court granted Dean's request for a preliminary injunction, and entered an order specifying its reasons therefor on October 1, 2001. The trial court focused on the restrictive covenants, and specifically, the requirement that "[t]he minimum side yard set back shall be five (5) feet." (App. 6). Also, the trial court determined, *inter alia,* 1) that the foundation on Lot No. 196 "is 4.7 feet from the boundary" with Dean's lot (App. 6); 2) that the erection of a permanent dwelling on Lot No. 196 "will result in a substantial and significant reduction in" Dean's ability to enjoy her home (App. 7); 3) that the injury to Dean is not readily subject to quantification so as to compensate Dean by a monetary award; 4) that Crossmann's witness testified that the placement of the foundation would not "result in a quantifiable economic damage to [Dean], which would be subject to an award of monetary damages" (App. 7); 5) that due to Crossmann's large production, the requirement to remove or replace the foundation would not impose a "significant injury" to Crossmann; 6) that Dean is likely to prevail on the merits of her complaint; and 7) that "the public interest [would] be served by granting [Dean] injunctive relief." (App. 8). The trial court ordered, in pertinent part, that Crossmann would be enjoined "from commencing or continuing any construction of the Lot # 196 Dwelling on the Lot # 196 Foundation and Slab including, but not being limited to, the addition or installation of any construction materials on the Lot # 196 Foundation and Slab as it is presently situated." (App. 8). Further, the order stated: "[Crossmann] may ... remove or replace said Foundation and Slab in order to comply with the current Plat Covenants. In the event that all such covenants are complied with, [Crossmann] may seek to remove this injunction by application to the Court." (App. 8). The trial court

ly consolidated the hearing on injunctive relief with the trial on the merits as allowed by Indiana Trial Rule 65(A)(2), from the course of proceedings, it is apparent that portions of Dean's complaint remain for determination.

denied the motion to dissolve the TRO, and denied Crossmann's motion for attorney's fees.

## DECISION

Crossmann contends, inter alia, that the trial court abused its discretion by granting Dean a preliminary injunction because she has an adequate remedy at law, *i.e.*, a lawsuit for monetary damages. We are constrained to agree.

■ Appellate review of the decision to grant a preliminary injunction is limited to a determination whether the trial court abused its discretion. *Daugherty v. Allen,* 729 N.E.2d 228, 232 (Ind.Ct.App.2000). A trial court is required to enter findings of fact and state its conclusions thereon when determining whether to grant a preliminary injunction. *Mercho–Roushdi Corp. v. Blatchford,* 742 N.E.2d 519, 524 (Ind.Ct. App.2001).

■ The trial court's discretion to enter a preliminary injunction is measured by several factors:

1) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; 2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; and 4) whether, by the grant of the preliminary injunction, the public interest would be disserved.

*Daugherty,* 729 N.E.2d at 232–33. The burden lies with the movant to prove each element by a preponderance of the evidence. *Mercho–Roushdi,* 742 N.E.2d at 524. Further, a preliminary injunction is an extraordinary remedy that should be used sparingly. *Id.* Injunctive relief should not be granted except in rare circumstances in which the law and facts are clearly within the moving party's favor. *Daugherty,* 729 N.E.2d at 233.

■ Dean requested a mandatory injunction requiring the removal of the foundation and slab in place on Lot No. 196 due to the violation of the restrictive covenants.

A mandatory injunction is an extraordinary equitable remedy which should be granted with caution. The plaintiff carries the burden of demonstrating injury which is certain and irreparable if the injunction is denied. In making its decision the trial court must weigh whether the plaintiff has an adequate remedy at law and the court must consider whether an injunction is in the public interest.

*Dible v. City of Lafayette,* 713 N.E.2d 269, 272 (Ind.1999) (quoting *Campbell v. Spade,* 617 N.E.2d 580, 583 (Ind.Ct.App.1993)). Although the "principles upon which mandatory and prohibitory injunctions are granted do not materially differ[, c]ourts are, however, more reluctant in granting the mandatory writ." *Schwartz v. Holycross,* 83 Ind.App. 658, 149 N.E. 699, 701–02 (1925) (noting that "[i]t is well settled that a court of equity has the power and jurisdiction to enjoin the violation of restrictive building covenants ... and that a mandatory writ may be issued to compel the modification, or even the removal, of a building erected in violation of such covenants.").

■ In analyzing the factors to be considered before granting an injunction, it is beyond question that Dean has demonstrated a reasonable likelihood of success at trial inasmuch as Crossmann admitted the violation of the restrictive covenants. Also, as determined by the trial court, there is no evidence that the public interest would be disserved by granting the

injunction. As to the other two factors, 1) balancing the equities and relative harm to each party, and 2) the existence of an adequate remedy at law, further analysis is required.

With regard to balancing the equities and the relative harm to each party, the evidence demonstrates that Dean carefully considered the effect of the restrictive covenants, including the set-back requirements, before she purchased her lot. Further, Dean adjusted the dimensions of her home in order to allow additional space for the side-yard set-backs. In an apparent effort to ensure the proper placement of her home, Dean has paid for two staked surveys of her lot.

Crossmann concedes that it placed the foundation and slab on Lot No. 196 within the five feet set-back requirement for side yards. However, the required ten feet of separation between structures was maintained in that Dean's house and the foundation on Lot No. 196 lie at least ten and one-half feet apart.[4]

■ Another consideration that may be associated with balancing the equities is a determination whether the violation was deliberate. *Cf. Schwartz,* 149 N.E. at 701 (noting that a mandatory injunction was issued in an action where the court "called attention to the fact that the violation was deliberate. . . ."). Evidence of Crossmann's knowledge of the violation exists in the record. The survey by Crossmann's engineers, performed prior to installation of the foundation and slab, placed the foundation at 4.6 feet from the side-yard boundary on the side adjacent to Dean's lot. Additionally, the building permit application filed by Crossmann included a side-yard set-back measurement of 4.6

feet. The permit application specifically noted that the property might be subject to restrictive covenants. As determined by the trial court, Crossmann is a large corporation in the building business. That Crossmann's employees and agents must be familiar with restrictive covenants is beyond challenge. Also, as noted by Dean, the structure to be placed on Lot No. 196 is 40 feet wide, while the lot is only 50 feet wide. In order to comply with the side-yard set-backs, Crossmann would have had to have placed the foundation and slab precisely on the lot. All of the evidence indicates that Crossmann knew or should have known that without precise calculations, the placement of the foundation and slab on Lot No. 196 would run afoul of the restrictive covenants.

The balance of the equities weigh in favor of Dean. Dean took precautions at her expense, through surveys and limiting the size of her home, to ensure that the improvements to her lot were properly placed so as not to violate the restrictive covenants; whereas, Crossmann, at the very least, failed to implement the planning necessary to ensure compliance with the restrictive covenants.

To this point in our analysis, Dean would be entitled to injunctive relief. The final component in our analysis is the determination whether an adequate remedy at law exists.

■■ To decide whether an adequate remedy at law exists, the trial court is charged with determining whether the legal remedy is as full and adequate as the equitable remedy. *Mercho–Roushdi,* 742 N.E.2d at 524. A legal remedy will not be deemed adequate merely because it exists. *Id.* Injunctive relief may be granted if it is

---

4. Crossmann urges that it still complied with the covenants because the import of the requirement was satisfied in that it maintained

the minimum ten feet of separation between the structures.

more practicable, efficient, or adequate than the remedy afforded by law. *Id.* Before granting injunctive relief, however, a court is required to consider alternate remedies available to the plaintiff. *Dible,* 713 N.E.2d at 272.

■ One purpose of a preliminary injunction is to prevent harm to the moving party that could not be corrected by a final judgment. *Mercho–Roushdi,* 742 N.E.2d at 524. As such, an injunction will not issue where the law can provide a full, adequate, and complete form of redress. *Id.*

■ "A restrictive covenant constitutes a compensable interest in land." *Dible,* 713 N.E.2d at 273. As such, the violation of restrictive covenants is necessarily subject to an economic assessment.

Dean testified as to her subjective belief that she could not be compensated by monetary damages. She offered that "[f]or drainage reasons [the foundation was] too close." (Tr. 22). Also, she stated:

> As per covenants it's supposed to be five feet. The covenants is supposed to be a binding agreement. You know I worry about it being so close. Once they put on the siding and the overhang, you know, and a fire starts in that house, it's surely going to take mine.

(Tr. 22). Yet, the covenants, notwithstanding drainage and fire hazard issues, allow structures to be built six inches closer than Dean's house and the foundation on Lot No. 196 as they presently exist.

■ We are not unsympathetic to Dean's contention that she will be losing five to six inches of the benefit she anticipated by placing her home an extra foot from the required five feet set-back; however, the five to six inches cannot reasonably provide the additional safety Dean complains that she might lose. Moreover,

"[i]njunctive relief is not to be used simply to eliminate a possibility of a remote future injury." *See Kennedy v. Kennedy,* 616 N.E.2d 39, 42 (Ind.Ct.App.1993), trans. denied; *see also Daugherty,* 729 N.E.2d at 236 ("mere apprehensions or fears of a complainant, unsustained by facts, do not constitute a sufficient ground for the interference of a court of equity by injunction.").

Because the violation of the restrictive covenants constitutes a compensable interest and because Dean's subjective concerns are directed to the possibility of a future injury, we find that Dean has an adequate remedy at law for monetary damages that can be corrected at the final judgment. *See Barlow v. Sipes,* 744 N.E.2d 1, 6 (Ind.Ct.App.2001), trans. denied, (party not entitled to injunctive relief for economic injury because post-trial damages award sufficient to make party whole).

Although we must reverse the granting of the preliminary injunction based upon the determination that Dean's damages are subject to an economic assessment, Dean's issues as to damages remain viable and unresolved. As our analysis reveals, except the trial court's determination that Dean did not have an adequate remedy at law, the trial court correctly analyzed the factors leading to a decision that Dean was entitled to relief. Crossmann has conceded that it violated a component of the side-yard set-back requirement found in the Sungate restrictive covenants. The evidence reveals that Crossmann was in a superior position to ensure compliance with the covenants. Yet unresolved are issues of Crossmann's level of culpability and the attendant economic damages for the violation. Further, as noted above, from the course of the proceedings it is apparent that portions of Dean's complaint remain for determination. Our reversal of

the preliminary injunction in no way impedes future litigation as to Dean's complaint, including a determination of the economic harm caused by the violation. *See Dible*, 713 N.E.2d at 274 n. 10 (addressing only the issues necessary to the disposition of the claimants' requests for declaratory and injunctive relief and noting the viability of future litigation, though refusing to speculate on the merit or propriety of the future claims).

Therefore, only those portions of the October 1, 2001 order directly related to the trial court's determination that Dean suffered irreparable harm and that she does not have an adequate remedy at law are reversed. We leave intact the trial court's findings that a violation with resulting harm occurred. The cause is reversed as to the granting of the preliminary injunction only, and we remand for a hearing as to an assessment of the economic harm to Dean as well as any portion of Dean's complaint remaining.

Based upon our resolution, we briefly address two additional contentions by Crossmann: 1) that the trial court abused its discretion by not requiring Dean to post a bond, and 2) that the trial court erred by granting the TRO and failing to award Crossmann attorney's fees for defending the TRO.

■ We turn first to Crossmann's contention that the trial court abused its discretion by failing to order Dean to post a bond for the preliminary injunction. In *Kennedy*, we addressed the failure to order a bond before issuing a preliminary injunction. *Kennedy*, 616 N.E.2d at 43–44. While acknowledging the requirement of a bond within Indiana Trial Rule 65(C), we noted that the fixing of an amount "is a discretionary function of the trial court and is reversible only for an abuse of that discretion." *Id.* at 43 (quoting *Peters et al. v. Davidson*, 172 Ind.App. 39, 47, 359

N.E.2d 556, 561 (1977)); *see also* Ind. Trial Rule 62(C) (upon appeal of, inter alia, injunctions, stays and terms as to bond or security lie within the discretion of the court where application made). We also concluded that a court assessing the amount of security should consider the evidence of the estimated damages, as well as its own experience and knowledge. *Kennedy*, 616 N.E.2d at 43. We concluded in *Kennedy* that the trial court did not abuse its discretion by failing to order security inasmuch as the enjoined party did not present evidence of estimated damages.

Here, Crossmann's witness testified as to the estimate of between $10,500 and $13,000 for removing and replacing the foundation on Lot No. 196. The witness also gave a rough estimate of losses at between $2,500 and $3,000 for administrative expenses and lost time for the work crew. Dean extensively cross-examined the witness regarding whether any damages would be incurred for lost administrative and crew time. The trial court explicitly concluded that, based upon the magnitude of Crossmann's construction business, Crossmann would not sustain any significant injury due to the injunction. Implicitly, the trial court rejected the damages for lost administrative and crew time. Therefore, we cannot say that the trial court abused its discretion by failing to order Dean to post a bond.

■ Next, we turn to Crossmann's contention that the trial court erred by failing to dissolve the TRO and order Dean to pay its attorney's fees for defending the TRO. The TRO was rendered moot by the trial court's ruling on the preliminary injunction. *See Boczar v. Meridian St. Found.*, 749 N.E.2d 87, 93 (Ind.Ct.App. 2001) (TRO moot after superseding preliminary injunction ordered). Further, Crossmann's request for attorney's fees was di-

**1044** ◼ ▮▮▮▮▮▮▮▮▮

rected solely to defending the TRO. At the September 27, 2001 hearing, Crossmann did not present evidence or argue its attorney's fees issue. We conclude that the issue as to attorney's fees for defending the TRO was no longer viable when the TRO issue became moot.

◼ Within its reply brief, Crossmann contends for the first time that reversal of the preliminary injunction is tantamount to its successful defense of the TRO; thus, its request for attorney's fees for defending the TRO should remain viable, allowing review of the propriety of the TRO and whether it is entitled to attorney's fees pursuant to Indiana Trial Rule 65. Issues raised for the first time in a reply brief are deemed waived. *See Tipmont REMC v. Fischer*, 697 N.E.2d 83, 93 (Ind.Ct.App. 1998), summarily aff'd. 716 N.E.2d 357 (Ind.1999), Rucker J. dissenting, (party cannot expand argument on appeal by raising for first time in reply brief). Further, even in its reply brief, Crossmann does not direct us to authority for its position or develop the argument beyond referring us to the trial rules generally

setting out requirements to obtain a TRO. The issue is waived.[5]

The cause is reversed and remanded for proceedings consistent with this decision.

SHARPNACK, J., and BAILEY, J., concur.

5. To the extent that cases reversing the entry of a preliminary injunction after review of the merits appear to require remand for an assessment of attorney's fees for the prevailing party, our review does not reveal any cases standing for that proposition wherein the parties did not request attorney's fees for defending the preliminary injunction. *See e.g. Grand Trunk Western Railroad Co. v. Kapitan*, 698 N.E.2d 363, 367 (Ind.Ct.App.1998), Darden J. dissenting, (remanding for determination of attorney's fees to successful party after reversal of wrongfully granted preliminary injunction); *National Sanitary Supply Co. v. Wright*, 644 N.E.2d 903, 907 (Ind.Ct.App.1994) (attorney's fees not warranted where reversal of preliminary injunction was not on merits). We note that in *IHSAA v. Vasario*, 726 N.E.2d 325, 335 (Ind.Ct.App.2000), our reversal of the preliminary injunction on the merits required a remand for a determination as to the appropriate amount of attorney's fees to be

awarded as requested by the prevailing party. However, we specifically recognized the trial court's stated concerns that the prevailing party continued to litigate the matter after it became moot and in an apparent attempt to cause the maximum expenditure of attorney's fees in order to discourage others from challenging its policies through litigation. *Id.* Accordingly, we stated:

> We remand to the trial court to determine the amount of expenses, if any, and fees which the IHSAA should recover. Of course, the trial court, within its discretion, need only award the sum it feels was properly incurred as a result of defending the injunctive relief as opposed to fees and expenses generated by the entire course of the litigation.

*Id.* Therefore, a reversal of injunctive relief on the merits requires only an assessment of whether attorney's fees should be awarded, not a definite award.