Randall BONEWITZ and Russell Dellinger, Appellants–Plaintiffs,

v.

Ted PARKER, Appellee–Defendant.

No. 85A04–0901–CV–16.

Court of Appeals of Indiana.

Aug. 26, 2009.

Transfer Denied Nov. 24, 2009.

Krishna L. Lynn, Lynn and Stein, P.C., Wabash, IN, Attorney for Appellants.

Jay A. Rigdon, Rockhill Pinnick LLP, Warsaw, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Randall Bonewitz and Russell Dellinger appeal from the trial court's judgment on their complaint alleging that Ted Parker is maintaining a nuisance by operating a furnace to dry mycelium adjacent to their home. The trial court found that "improvements" Parker has made to the operation have "greatly reduced" the adverse effect of Parker's mycelium-drying business on the home, and the court declined to enter a total permanent injunction against the business. We conclude that notwithstanding the improvements, Parker continues to maintain an unabated nuisance which deprives Bonewitz and Dellinger of the free use and comfortable enjoyment of their property.

We reverse and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

In 1997, Bonewitz and Dellinger[1] bought an old farm house on approximately one-half acre in North Manchester. Parker owns the surrounding farm land, which, at the time Bonewitz purchased the farm house, Parker used for farming hay. But in 2003, Parker started a new business called Parker By–Products, a business which dries wet mycelium to be sold for use in animal feed. Mycelium is a byproduct of the manufacture of food-grade citric acid. In order to dry mycelium, Parker built a furnace, which uses sawdust as fuel. The drying process creates emissions that include gases and sawdust ash. Those emissions are discharged from a smoke stack on the furnace, which is located approximately 100 to 150 feet from the Bonewitz home.

When Parker started the business, he obtained a variance from agricultural use to business/commercial use from the Wa-

---

1. For ease of discussion, we may refer to Bonewitz and Dellinger collectively as "Bonewitz."

bash County Board of Zoning Appeals, over the objections of Bonewitz and Dellinger. Parker By–Products operates as follows: up to three to five semi tractor-trailers per day deliver wet mycelium to Parker's facility; sometimes, the wet mycelium sits outside in the sun and emits a stench; trucks deliver sawdust to Parker's facility; initially the sawdust was dumped outside, but Parker has since extended a pole building to accommodate dumping inside; the sawdust is burned to heat the dryer, which dries the mycelium; and trucks pick up the dried product and haul it away. When it is operational, the business generally runs "24/7."[2] Transcript at 29.

Bonewitz and Dellinger's enjoyment of their home has been substantially affected by Parker's business operation in numerous ways: emissions of smoke and/or steam surround the house; a "rotten, sour" smell permeates the house and clings to fabrics, *id.* at 30; a "nauseating" odor comes from the drying process, similar to that of "a rendering plant when they're burning dead animals," *id.* at 57; sawdust blows onto the Bonewitz property and covers everything; when the dryer is running, Bonewitz and Dellinger can feel strong vibrations that cause the house to shake; and trucks come and go everyday and at all hours of the night, disturbing Bonewitz and Dellinger in their sleep.[3] Because of the foul odor and sawdust, Bonewitz and Dellinger avoid going outside, keep their windows closed, and do not have the unrestricted use of their yard or swimming pool. Parker has taken steps to reduce the sawdust and stack emissions

blowing onto the Bonewitz property, to minimize the vibrations caused by the dryer, and to ameliorate the noise and lights associated with the trucks during the night.

On October 10, 2007, Bonewitz and Dellinger filed a complaint alleging that Parker's mycelium-drying operation constitutes a nuisance. Bonewitz and Dellinger sought a permanent injunction or, in the alternative, damages. Following an evidentiary hearing, the trial court declined to enter a total permanent injunction, but ordered that Parker be permanently enjoined from unloading sawdust outside of the pole building. The trial court did not award damages. This appeal ensued.

## DISCUSSION AND DECISION

■■■ Bonewitz and Dellinger contend that the trial court's judgment is clearly erroneous. Here, the trial court sua sponte issued findings of fact and conclusions thereon in support of its order. In that situation, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has made no findings. *Coffman v. Olson & Co.*, 906 N.E.2d 201, 206 (Ind.Ct.App.2009). In reviewing the judgment, this court must determine whether the evidence supports the findings and whether the findings, in turn, support the conclusions and judgment. *Id.* We will reverse a judgment only when it is shown to be clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and the conclusions entered on the findings. *Id.* In order to determine

---

**2.** As of the date of the trial, Parker had been unable to obtain affordable sawdust to heat the dryers, so the operations had been shut down for some time. But Parker testified that he would restart operations as soon as he could obtain sawdust or other fuel to heat the dryer.

**3.** Bonewitz testified that the noise associated with the trucks includes the hydraulics used for unloading the trailers and the use of air brakes or "jake brakes." Transcript at 61.

that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.* at 206–07. In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. *Id.* at 207. In the case of a general judgment, a general judgment may be affirmed on any theory supported by the evidence presented at trial. *Id.* As Bonewitz and Dellinger are appealing from a negative judgment, we will reverse only if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to a conclusion other than that reached by the trial court. *Aamco Dealers Adv. Pool v. Anderson,* 746 N.E.2d 383, 386 (Ind.Ct.App.2001).

Here, the trial court found and concluded in relevant part as follows:

> It is the law in Indiana that a lawful and useful business is not to be destroyed unless the necessity for doing so is strong, clear, and urgent. *Friendship Farms Camps v. Parson,* 172 Ind.App. 73, 78, 359 N.E.2d 280 (Ind.Ct.App. 1977).

> \* \* \*

> Plaintiffs moved into their home sometime in the latter part of 1997 or early 1998. Their home is adjacent to Defendant's property upon which his business operates. The Defendant, following BZA approval, commenced his business in the latter part of 2003 or early 2004. Over the course of the last few years, the Defendant has made improvements to his operation by increasing stack size, adding a bag house and fixing the fan. All have reduced the effects of his operation on Plaintiff's property. He has

> further extended his pole building so that sawdust, when delivered, can be done inside the building. Since making that last improvement he has not operated his facility.

> Undoubtedly the Plaintiffs are disturbed and annoyed by the Defendant's business. However, in light of the improvements, the effect the Defendant's business has on their home has been greatly reduced. Because of that the Court does not find the necessity for a permanent injunction (which would effectively destroy Defendant's business) to be strong, clear and urgent. However, the Defendant shall be permanently enjoined from unloading sawdust outside the pole building.

Appellants' App. at 5–6 (footnote omitted).

Indiana Code Section 32–30–6–6 defines a nuisance as whatever is injurious to health, indecent, offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property. In *Sherk v. Indiana Waste Systems, Inc.,* 495 N.E.2d 815, 818 (Ind.Ct.App.1986), *trans. denied,* this court observed:

> When deciding whether one's use of his property is a nuisance to his neighbors it is necessary to balance the competing interests of the landowners. In so doing we use a common sense approach. Mere annoyance or inconvenience will not support an action for a nuisance because the damages resulting therefrom are deemed *damnum absque injuria* in recognition of the fact life is not perfect. Thus, "reasonable use" of one's property may be a defense to a nuisance action where the use merely causes *incidental* injury to another. Where, however, one uses his property for his profit so as to practically confiscate or destroy his neighbor's property he should be compelled to respond in damages, for it

can hardly be said such use is reasonable. Whether one's use of property is reasonable is determined by the effect such use has on neighboring property. Liability is imposed in those cases where the harm or risk thereto is greater than the owner of such property should be required to bear under the circumstances.

\* \* \*

The mere fact a business is operated in accord with various rules and regulations does not require a finding the use is reasonable. A determination of reasonableness of use in an action for nuisance depends upon the effect of the activity upon one's neighbors in the particular circumstances and locality, not merely upon whether one operates within the confines of particular authority. A lawful business may be of such a nature, so situated, or so conducted as to constitute or become a nuisance.

(Citations omitted). As this court has reiterated,

> "the question is whether the nuisance complained of will or does produce such a condition of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibilities, and of ordinary tastes and habits, and as, in view of the circumstances of the case, is unreasonable and in derogation of the rights of the complainant."

*Yeager & Sullivan, Inc. v. O'Neill,* 163 Ind.App. 466, 324 N.E.2d 846, 851 (1975) (quoting *Dittman v. Repp,* 50 Md. 516 (1879)).

Here, the undisputed evidence shows that Bonewitz and Dellinger have suffered a number of unreasonable infringements on the use and enjoyment of their property as a result of Parker's business. The trial court recognized that Bonewitz and Del-

linger are "undoubtedly . . . disturbed and annoyed by [Parker's] business." Appellants' App. at 5. But the trial court found that the effect of Parker's business on Bonewitz's home has been "greatly reduced" by Parker's efforts to mitigate the dust, truck noise, and vibrations that are inherent in his business activities, *id.* at 5, and that an injunction was not warranted. Nevertheless, the undisputed evidence shows that the harm to Bonewitz and Dellinger continues and is greater than they "should be required to bear under the circumstances." *See Sherk,* 495 N.E.2d at 818. They live with the stench that permeates their home and clings to fabrics, and they are unable to use their yard or even to open the windows to their home. Those infringements are not occasional or incidental, and they are more than an annoyance or inconvenience. While the nuisance may have been partially ameliorated, it has not been abated.

On appeal, Parker minimizes the significance of numerous other complaints lodged by Bonewitz and Dellinger as evidence that they are attempting "to make a mountain out of the proverbial molehill," including, by way of example, that they "complain of odors after buying a farmhouse in sight of a duck barn." But the issue here is not the smell from a pre-existing duck barn or any other normal inconveniences associated with living in a rural farming environment. The issue here is the offsite impact of infringements from a new business inserted into the neighborhood and whether that impact would offend persons of ordinary sensibilities. *See Yeager,* 324 N.E.2d at 851.

Parker contends that Bonewitz and Dellinger bought their farmhouse knowing that they were in the middle of an agriculturally-zoned area, and he alleges that they "came to the nuisance in the sense that the complaints they have are compa-

rable to the complaints of anyone experiencing any discomfort by any agricultural operation." *See* Brief of Appellee at 14. Parker also notes that one who moves to an agricultural area simply cannot complain of discomfort based upon agricultural uses. And Parker asserts that Bonewitz and Dellinger purchased a farmhouse in the middle of a farming area but do not want to experience "the normal residual effects of farming." *Id.* at 16.

But Parker's premise is flawed because Parker By–Products is a separately organized business and not an agricultural use. It is for that very reason that a variance was required. As Parker observes, a variance "to operate a business to produce animal feed" would not have been required if he were drying the mycelium for his own use. Instead, the raw material, the wet mycelium, is imported to the Parker farm, and the finished product, the dried mycelium, is then sold to others as an animal feed supplement. As this court has recognized, not all activities with an agricultural nexus are themselves agricultural. *See Day v. Ryan,* 560 N.E.2d 77, 82–83 (Ind. Ct.App.1990) (holding stockyard is a separately organized activity, not an agricultural pursuit); *In re Boyer,* 65 Ind.App. 408, 117 N.E. 507, 508 (1917) (holding wheat threshing is a business entirely separate and independent of farming).

The United States Supreme Court has also recognized the distinction between agriculture and related but separate and independent business activities. In *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949), the Court described the factors which determine whether a particular type of activity is agricultural and concluded that, "The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity." *Id.* at 761, 69 S.Ct. 1274. Here, it is readily apparent that the Parker By–Products "feed business" is a separately organized activity and is, therefore, not an agricultural pursuit.

We agree with Parker that, "There has been no significant change in the externalities of agricultural operations by the Parkers during the period of time that Bonewitz and Dellinger have owned the house." *See* Brief of Appellee at 10. That is because the off-site impact at issue has not occurred from Parker's agricultural operations but from the creation and operation of an entirely new business enterprise, Parker By-products, that is a separately organized independent activity. *See In re Boyer,* 117 N.E. at 508; *Day v. Ryan,* 560 N.E.2d at 82–83. Indeed, in his testimony, Parker admitted that his mycelium-drying operation is atypical for a farmer. Transcript at 156. And Parker compared his business to a "biorefinery," albeit on a smaller scale. *Id.*

In requesting that we affirm the trial court's judgment, Parker relies in part on this court's opinion in *Wendt v. Kerkhof,* 594 N.E.2d 795 (Ind.Ct.App.1992), *trans. denied.* In *Wendt,* we affirmed the trial court's judgment in favor of a hog farmer where the plaintiff filed a complaint alleging a nuisance due to odors from the farm. We observed that "much conflicting evidence was presented, both from experts and nearby landowners" regarding the odors. *Id.* at 797–98. And we declined the plaintiffs' request to reweigh the evidence in light of the conflicting evidence.

In this case, however, the evidence is uncontradicted that offensive odors envelop and permeate the Bonewitz home. While the evidence shows that Parker has taken steps to reduce the effects of noise and dust emanating from his business, the evidence also shows that noise and offensive odors continued to infringe upon and

obstruct the free use of their property.[4] Parker admitted that his business emits "more flume or steam" than a typical corn drying operation, transcript at 135; that the mycelium is sometimes left outside for periods of time, which emits a particularly foul odor, *id.* at 127; and that he, too, "sometimes" notices an odor from the stack, *id.* at 151. The evidence shows that, unlike typical farming operations, Parker's business is not seasonal. As a result, Bonewitz and Dellinger live with the regular onslaught of noise, dust, and odors, which offend the senses, obstruct the free use of their property, and interfere with their comfortable enjoyment of life and property. *See* I.C. § 32–30–6–6. Thus, the evidence leads only to the conclusion that the nuisance continues unabated, and we are left with the firm conviction that the trial court erred when it declined to grant the relief sought.

■ Again, as Parker acknowledges, "[t]he mere fact a business is operated in accord with various rules and regulations does not require a finding the use is reasonable." *Sherk,* 495 N.E.2d at 818. On appeal, Parker reiterates that he would not have needed a variance from the zoning board if he were using the dried mycelium for his own farming operation instead of selling it, and he urges us to consider the fact that his operation was in compliance with applicable rules and regulations. But the issue here is the magnitude of the operation. Parker testified that 90% of the dried mycelium he produces is sold to others. If Parker confined the operation to drying mycelium for his own use, the trucks and dryer would not be going "24/7" and the smoke stack's emissions would be a fraction of what they have been. Instead, Parker By–Products is a distinct commercial venture, and by Parker's own

testimony, it is not part of normal farming operations.

■ But that is not the end of our inquiry. The trial court's judgment addressed Bonewitz's request for a permanent injunction and expressed concern that such equitable relief "would effectively destroy" Parker's business. We share the trial court's concern. Small business free enterprise and entrepreneurship should be encouraged. At the same time, an otherwise lawful and laudable business may not operate in derogation of the rights of others without being held accountable. *See Yeager & Sullivan, Inc.,* 324 N.E.2d at 851.

■ An injunction is not the first available remedy. Indeed, injunctive relief is available only if the remedy at law is inadequate. *See Barlow v. Sipes,* 744 N.E.2d 1, 6 (Ind.Ct.App.2001). Before granting injunctive relief, a court is required to consider alternate remedies available to the plaintiff. *Crossmann Communities, Inc. v. Dean,* 767 N.E.2d 1035, 1042 (Ind.Ct.App.2002). An injunction will not issue where the law can provide a full, adequate and complete form of redress. *Id.* Here, the trial court did not address Bonewitz and Dellinger's request, in the alternative, for damages.

■ To decide whether there is an adequate remedy at law, the trial court is charged with determining whether the legal remedy is as full and adequate as an equitable remedy. *Id.* at 1041. A legal remedy will not be deemed adequate merely because it exists. *Id.* Injunctive relief may be granted if it is more practicable, efficient, or adequate than the remedy afforded at law. *Id.* at 1041–1042.

---

4. Again, at the time of the final hearing, Parker's business had indefinitely suspended operations due to the expense of sawdust used for fueling the furnace.

On remand, we instruct the trial court to determine first whether Bonewitz and Dellinger can be made whole with a money judgment. If so, the trial court shall consider the evidence of Bonewitz and Dellinger's damages. The measure of damages is not restricted to the diminution in rental value. In *Rust v. Guinn*, 429 N.E.2d 299, 303–04 (Ind.Ct.App.1981), this court observed:

> In the Restatement (Second) of Torts § 929(1) (1977) it is stated:
>
> "Harm to Land from Past Invasions"
>
> "(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for
>
> (a) *the difference between the value of the land before the harm and the value after the harm,* or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,
>
> (b) the loss of use of the land, *and*
>
> (c) *discomfort and annoyance to him . as an occupant."*

(Emphases added).

Bonewitz and Dellinger presented evidence regarding the approximate value of their home absent the nuisance, as well as evidence that their home is not currently marketable. Thus, the evidence shows that the home's value has been greatly diminished by its close proximity to Parker's business. A proper measure of damages shall be calculated as the difference between the market value of the Bonewitz home if the Parker By–Products mycelium-drying operation ceased and its current market value with an active nuisance next door.[5] *See, e.g., Northern Ind. Public*

*Serv. Co. v. W.J. & M.S. Vesey,* 210 Ind. 338, 200 N.E. 620, 627 (1936) (holding measure of damages for unabated nuisance affecting greenhouse was the depreciation of the market value by reason of the continuance of a permanent nuisance). Further, Bonewitz and Dellinger presented evidence, and the trial court found, that they have been "disturbed and annoyed" by Parker's business, and they may also be entitled to damages for their discomfort and annoyance as occupants. *See Rust,* 429 N.E.2d at 303–04; Restatement (Second) of Torts § 929(1) (1977).

On remand, if the trial court decides to award damages in lieu of a permanent injunction, the court shall conduct a hearing solely on the issue of damages, giving the parties an opportunity to present additional evidence on that issue. If, however, the trial court determines that Bonewitz and Dellinger cannot be made whole with a money judgment, then the court shall issue a total, permanent injunction against Parker prohibiting operation of his mycelium-drying business.

Reversed and remanded with instructions and for proceedings not inconsistent with this opinion.

FRIEDLANDER, J., and VAIDIK, J., concur.

---

5. A proper damages award should include consequential damages, such as moving expenses, and should enable Bonewitz and Del- linger, should they choose, to move to another home without suffering any financial loss.