**ALL SEASON INDUSTRIES, INC.,**
**Appellant (Plaintiff Below),**

v.

**TRESFJORD BOATS A/S, and Summit Bank, Appellees (Defendants Below).**

No. 35A02–8903–CV–00094.

Court of Appeals of Indiana,
Second District.

Dec. 6, 1990.

---

Michael E. Boonstra, Smith, Ridlen & Boonstra, Logansport, for appellant.

Stephen A. Claffey, Brent D. Taylor, Baker & Daniels, Indianapolis, Stephen J. Michael, Matheny, Michael, Hahn & Bailey, Huntington, for appellee Tresfjord Boats A/S.

Grant F. Shipley, Miller Carson & Boxberger, Fort Wayne, for appellee Summit Bank.

SULLIVAN, Judge.

All Season Industries, Inc. (All Season) appeals from the grant of partial summary judgment in favor of Tresfjord Boats A/S (Tresfjord). The order granting summary judgment dissolved a previously entered preliminary injunction against Summit Bank, restraining payment under a letter of credit in favor of Tresfjord.

We affirm.

All Season entered into an agreement with Tresfjord, a Norwegian company, to reproduce and manufacture in the United States a boat designed and manufactured by Tresfjord in Norway. To facilitate the agreement, All Season applied for an irrevocable, commercial letter of credit through Summit Bank. On July 9, 1987, Summit Bank issued a letter of credit in favor of Tresfjord. The letter of credit called for Tresfjord to make two shipments. Shipment "A" was to include one "Tresfjord Ultra" boat (Record at 107) and a complete set of patterns for the production of moulds for the boat's hull, deck and inner liner. Shipment "B" was to include a complete set of patterns for the production of moulds for the boat's flybridge, sunbridge, bridge liners, cabin liner, bowspit, swimplatform, hatches and engine mounts, all available technical drawings and diagrams and all available documentation on jigs and fixtures.

The letter of credit also authorized Forretningsbanken A/S, the advising bank in Norway, to pay a total of $271,050.00 upon presentment by Tresfjord of three drafts. The first two drafts were presented and paid. The third draft, which is the subject of this litigation, was to be paid August 15, 1988.

Prior to the payment of the third draft, All Season filed suit against Tresfjord seeking injunctive relief and damages for breach of contract. All Season also sought and obtained a preliminary injunction restraining Summit Bank from paying the third draft. All Season moved for partial summary judgment seeking permanent injunctive relief, and Tresfjord moved for summary judgment to dissolve the preliminary injunction. The court sustained Tresfjord's motion, dissolved the preliminary injunction, and denied permanent injunctive relief to All Season.[1]

Simply stated, the issue presented upon appeal is whether the trial court erred in finding as a matter of law that All Season was not entitled to injunctive relief, thereby permitting Summit Bank to pay Tresfjord pursuant to the letter of credit.

A letter of credit is an engagement by a bank or other issuer whereby the bank agrees at the request of a customer to honor demands for payment which comply with the terms specified in the letter of credit. Uniform Customs and Practice for Documentary Credits (1983 Revision), International Chamber of Commerce, Publication No. 400 (UCP), art. 2; I.C. 26-1-5-103(1)(a) (Burns Code Ed. Supp.1990).[2] There are three parties to a letter of credit: (1) the "customer", the party requesting that the credit be issued, in this case All Season; (2) the "issuer", the party issuing the credit, in this case Summit Bank; and (3) the "beneficiary", the party authorized under the terms of the credit to draw or demand payment, here Tresfjord. UCP,

---

**1.** In response to All Season's Motion to Correct Errors, the court expanded its original order and concluded that (1) the documents presented sufficiently conformed to the terms of the letter of credit, and (2) All Season had an adequate remedy at law. On appellate review, however, the trial court's judgment is to be affirmed if it is sustainable upon any theory or basis found in the record. *Havert v. Caldwell* (1983) Ind., 452 N.E.2d 154.

**2.** The letter of credit in the present case provides, "EXCEPT AS OTHERWISE EXPRESSLY STATED HEREIN, THIS CREDIT IS SUBJECT TO THE UNIFORM CUSTOMS & PRACTICE FOR DOCUMENTARY CREDITS (1983 REVISION) INTERNATIONAL CHAMBER OF COMMERCE. PUBLICATION NO. 400." Record at 107. Therefore, the parties have made the Uniform Customs & Practice for Documentary Credits (UCP) part of the contract, and we will treat the UCP as binding. However, Article 5 of the Uniform Commercial Code (codified in Indiana at I.C. 26-1-5) also governs letters of credit, and we will look to the provisions contained in Article 5 for additional guidance where those provisions do not conflict with the provisions of the UCP.

art. 2; I.C. 26–1–5–103. The present case also involves a fourth party. A Norway bank, Forretningsbanken, acted as an "advising bank", a neutral party which advises the beneficiary of the issuance of a credit by another bank. UCP, art. 8; I.C. 26–1–5–103(e).

■ Letters of credit are unique financing arrangements often employed in international sales of goods because the letter of credit contract is independent of the underlying contract. *See, Pringle Associated Mortgage Corp. v. Southern Nat'l Bank* (5th Cir.1978) 571 F.2d 871. Under a letter of credit, the issuing bank must pay drafts or demands for payment which comply with the terms of the credit, regardless of any breach of the underlying contract between the customer and the beneficiary. I.C. 26–1–5–114(1); White & Summers, 2 *Uniform Commercial Code* § 19–2 at 8 (3d Ed.1988); Dolan, *The Law of Letters of Credit*, para. 2.01, para. 4.03[6][a] (1984). In keeping with the goal of facilitating international trade, this principle of independence assures the beneficiary of prompt payment from a solvent party and minimizes the risk of judicial interference and litigation in a foreign jurisdiction. *See Banque Worms v. Banque Commerciale Privee* (S.D.N.Y.1988) 679 F.Supp. 1173, *aff'd* (2nd Cir.), 849 F.2d 787.

■ Indiana Code 26–1–5–114 sets forth a limited exception to the issuer's duty to honor drafts or demands for payment which comply with the terms of the credit.[3] That statute provides, in relevant part:

"(2) Unless otherwise agreed, when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (IC 26–1–7–507) or of a certificated security (IC 26–1–8–306), or is forged or fraudulent, or there is fraud in the transaction:

(a) The issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (IC 26–1–3–302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (IC 26–1–7–502) or a bona fide purchaser of a certificated security (IC 26–1–8–302); and

(b) In all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery, or other defect not apparent on the face of the documents, *but a court of appropriate jurisdiction may enjoin such honor.*" (Emphasis supplied.)

Therefore, when a document appears on its face to conform with the terms of the credit, but the document does not in fact conform to the necessary warranties or is forged or fraudulent or there is fraud in the transaction, an issuer acting in good faith, may, without liability to the customer, honor the draft, or a customer may seek to enjoin the issuer from paying the draft.

■ In the present case, All Season, the customer, does not argue that the documents do not comply with the necessary warranties or that the documents are forged or fraudulent. All Season attempts to inject an issue of "fraud in the transaction" by reference to the trial court's original findings. When the trial court issued the preliminary injunction, the court made findings of fact which included findings that the transaction between All Season and Tresfjord was "infected with fraud". Record at 157. Upon appeal, All Season asserts that these findings and the evidence presented at the preliminary injunction hearing, create a genuine issue of material fact rendering summary judgment inappropriate. Ind.Rules of Trial Procedure, Trial Rule 56.

However, fraud was not alleged in All Season's complaint nor was it an issue until

---

**3.** The UCP does not contain a provision allowing for injunctive relief. Therefore, a determination as to whether and when injunctive relief is appropriate in a letter of credit transaction must be made with reference to I.C. 26–1–5–114(2).

the court, being of the correct view that fraud was a condition precedent to the issuance of an injunction under these circumstances, read a fraud allegation into All Season's complaint for an injunction.

At the preliminary injunction hearing, the court engaged in the following discussion with counsel for All Season:

"MR. BOONSTRA: Right. Right. Well, would the court then infer fraud?

JUDGE McINTOSH: Would I? That's what we're here for and this gentleman hasn't even been able to present any evidence at all. Do you mean at this point do I infer fraud?

MR. BOONSTRA: Yeah.

JUDGE McINTOSH: No. At this point it is your burden to show it." Record at 130.

We note that some authorities have argued that the "fraud in the transaction" exception should be limited to cases of fraud in the credit transaction and not the underlying transaction. Dolan, *The Law of Letters of Credit*, para. 7.04[3][b]; Harfield, *Enjoining Letter of Credit Transactions*, 95 Banking L.J. 596 (1978). These authorities maintain that a limited approach more closely serves the independent nature of letter of credit transactions. We agree with this approach but need not do so to resolve the issues here.

■ Even if "fraud in the transaction" were held to encompass the underlying transaction, findings of fact made upon issuance of a preliminary injunction, as required by Ind.Rules of Trial Procedure, Trial Rule 65(D), are not binding upon the trial court. *Cement Masonry Workers Union, Local No. 101 v. Ralph M. Williams Enterprises* (1976) 3d Dist., 169 Ind.App. 647, 350 N.E.2d 656, 657. Moreover, the evidence presented at the preliminary injunction hearing does not support a finding of "fraud in the transaction". No genuine issue of material fact is present with respect to fraud in the transaction.

All Season's primary contention is that it is entitled to an injunction because the documents relating to Shipment B do not conform to the terms of the letter of credit. The letter of credit specifies precisely what Tresfjord was to include in Shipment B:

"SECOND SHIPMENT WILL COVER THE FOLLOWING:

B. COMPLETE SET OF PATTERNS FOR FABRICATION OF PRODUCTION MOULDS FOR TRESFJORD ULTRA MODEL RANGE. INCLUDING: FLYBRIDGE, SUNBRIDGE, BRIDGE LINERS, CABIN LINER, BOWSPIT, SWIMPLATFORM, HATCHES AND ENGINE MOUNTS ALL AVAILABLE TECHNICAL DRAWINGS AND DIAGRAMS–ALL AVAILABLE DOCUMENTATION ON PRODUCTION JIGS AND FIXTURES.

SHIPMENT "B" IS TO BE SHIPPED NOT LATER THAN SEPTEMBER 15, 1987.

PARTIAL SHIPMENTS ARE ALLOWED. PLACE OF EXPIRY–TRONDHEIM, SEPTEMBER 25, 1987. REQUIRED DOCUMENTS TO BE RELEASED DIRECTLY TO ALL SEASON INDUSTRIES, INC. OR THEIR DESIGNEE." Record at 107.[4]

The commercial invoice and bill of lading from Shipment B disclose only the shipment of "moulds for production of plastic boat parts." Record at 153, 154. Therefore, the bill of lading and commercial invoice for shipment B do not conform to the letter of credit.

■ However, the present litigation involves Summit Bank's duty to pay the third draft called for by the letter of credit. All Season erroneously presumes that the third draft is a "documentary" draft. A letter of credit may call for a documentary draft, meaning that honor of the letter of credit is conditioned upon the presentation of a document or documents which comply with the terms of the credit. UCP art. 2; I.C. 26–1–5–103(b).[5] In this case, the letter of credit

---

4. Our reproduction of the letter of credit, as it appears in the record, is set forth in its entirety as an appendix to this opinion.

5. All Season relies upon UCP art. 41(c) which states that the description of the goods in the invoice must correspond with the description in the credit. It alleges that Shipment B did not

specifically informs Forretningsbanken, the advising bank, how to handle the drafts. The first draft of $171,050.00 is "PAYABLE AT SIGHT *AGAINST PRESENTATION OF DOCUMENTS.*" (Emphasis supplied.) Record at 107. Therefore, the letter of credit clearly requires the first draft to be documentary. However, the credit states that the second and third drafts are payable, as follows:

"50,000.00 USD AGAINST DRAFT, ISSUED BY BENEFICIARY. DRAWN ON AND ACCEPTED BY FORRETNINGSBANKEN A/S, TRONDHEIM FOR OUR ACCOUNT, MATURITY DATE FEBRUARY 15, 1988

50,000.00 USD AGAINST DRAFT ISSUED BY BENEFICIARY, DRAWN ON AND ACCEPTED BY FORRETNINGSBANKEN A/S, TRONDHEIM, FOR OUR ACCOUNT, MATURITY DATE AUGUST 15, 1988"

Record at 107.

The letter of credit does not require the presentation of any documents with the second or third drafts. Therefore the letter of credit is "clean" with respect to the second and third drafts. *See, Professional Modular Surface, Inc. v. Uniroyal, Inc.* (1982), 108 Ill.App.3d 1046, 64 Ill.Dec. 625, 440 N.E.2d 177; *Baker v. Nat'l Blvd. Bank of Chicago* (1975) N.D.Ill., 399 F.Supp. 1021. *See also*, 8 Indiana Practice, *Uniform Commercial Code Forms*, art. 5, at 309 (1986); Uniform Commercial Code § 5–102, official comment. A clean letter of credit requires only that the beneficiary present a draft and no other documents. In the case of a clean letter of credit, the issuer's only obligation is to carefully inspect the draft presented by the benefi-

include all items required to be included as set forth in the letter of credit. As noted, however, this argument has application only with reference to a documentary draft.

6. Indiana Code 26–1–5–114(2)(b) provides:
"*In all other cases* as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery, *or other defect not apparent on the face of the documents,* but a court of appropriate jurisdiction may enjoin such honor." [Emphasis supplied.]

ciary to ensure that the draft is not a fraud or forgery. *See, Baker, supra,* 399 F.Supp. at 1024. There can be no issue as to whether documents conform to the letter.

 Even if it were otherwise, it is our considered opinion that a customer may not enjoin an issuer from payment on a documentary letter of credit solely upon grounds that documents do not conform to the letters of credit absent a showing (1) that the documents do not conform to the warranties made on negotiation or transfer of a document of title or of a certificated security; (2) that the documents are forged or fraudulent; and (3) that there is fraud in the transaction.[6] I.C. 26–1–5–114(2). *See,* Dolan, *The Law of Letters of Credit,* para. 7.04[3]. The first sentence of § 5–114(2) states:

"Unless otherwise agreed, *when documents appear on their face to comply with the terms of the credit ...*" (Emphasis supplied.)

If the documents do *not* appear on their face to comply with the terms of the credit, then § 5–114(2) is inapplicable and injunctive relief is not the appropriate remedy.

In *Peoples State Bank of Clay County v. Gulf Oil Corp.* (1983) 1st Dist. Ind.App., 446 N.E.2d 1358, the customer sought to enjoin the issuer from paying the beneficiary under an irrevocable, documentary letter of credit on the basis that the documents presented did not conform to the terms of the letter of credit. There was no allegation of forged or fraudulent documents, fraud in the transaction, or a breach of warranties as specified in § 5–114(2).

We note that the underscored language in the statute might invite a contention that an injunction is available where the customer notifies the issuer of *any* defect not apparent on the face of the document. Although subsection (b) of § 5–114(2) is not artfully drafted, subsection (b) must be read within the limitations set forth in the general provisions of section (2). To give the language of subsection (b) a broader interpretation would undercut the independence principle and the utility of letters of credit.

■ It is our analysis of the law that in an injunction proceeding a trial court may not substitute its own determination as to conformance of documents for that of the issuer. The trial court in *Peoples* did not do so. Rather, the court made a determination in the absence of a conformance decision by the issuer. There, the issuer refused to make a determination regarding the conformity of the documents until the temporary restraining order was dissolved. The trial court, however, found that the documents sufficiently conformed to the credit's requirements. Without addressing the issue whether injunctive relief is available upon the sole ground that the documents presented do not comply with the letter of credit, our First District upheld the trial court's conformity determination[7] and held that there was no error in the trial court's refusal to enjoin payment. Because the *Peoples* case did not squarely address the issue of whether and under what circumstances an injunction is available in a letter of credit transaction, we do not state a holding contrary to the holding in that case. We merely clarify that injunctive relief is only available in the three instances specifically enumerated in the statute.[8]

■ We therefore hold that, as a matter of law, All Season was not entitled to injunctive relief and the court did not err in granting summary judgment in favor of Tresfjord.

The judgment is affirmed and the State Treasurer's Office is directed to release the funds on deposit as a result of the posting of appellant's injunction bond, together with accumulated interest, to the Clerk of this Court for further disbursement.

BAKER and HOFFMAN, JJ., concur.

7. We state no view with respect to the impact of the *Peoples* opinion which seems to permit substantial compliance with documentary requirements in letters of credit rather than strict compliance. *See* Dolan, *The Law of Letters of Credit,* para. 6.05[1][c] n. 106. It would appear, however, to impede the issuer's ability to promptly decide whether to honor the beneficiary's draft and to increase the incidence of litigation regardless of the issuer's determination. *See* Dolan, para. 6.02 at 6–4.

APPENDIX TO OPINION

"JULY 9, 1987

TO: FORRETNINGSBANKEN A/S TRONDHEIM, NORWAY

PLEASE ADVISE YOUR CUSTOMER OF THE FOLLOWING WITHOUT ADDING YOUR CONFIRMATION.

IRREVOCABLE LETTER OF CREDIT NO. 1315

IN FAVOR OF: TRESFJORD BOATS A/S N–6390 VESTNES, NORWAY

GENTLEMEN:

WE HEREBY AUTHORIZE YOU TO VALUE ON US FOR THE ACCOUNT OF:

ALL SEASON INDUSTRIES, INC.

180 LOGAN STREET

MARKLE, INDIANA

FOR A SUM OR SUMS IN U.S. DOLLARS NOT EXCEEDING A TOTAL OF 271,050.-00 USD (TWO HUNDRED SEVENTY-ONE THOUSAND FIFTY AND NO/100 U.S. DOLLARS) AVAILABLE BY YOUR DRAFTS AS FOLLOWS:

171,050.00 USD PAYABLE AT SIGHT AGAINST PRESENTATION OF DOCUMENTS.

50,000.00 USD AGAINST DRAFT, ISSUED BY BENEFICIARY. DRAWN ON AND ACCEPTED BY FORRETNINGSBANKEN A/S, TRONDHEIM FOR OUR ACCOUNT, MATURITY DATE FEBRUARY 15, 1988

50,000.00 USD AGAINST DRAFT ISSUED BY BENEFICIARY, DRAWN ON AND ACCEPTED BY FORRETNINGSBANKEN A/S, TRONDHEIM,

8. The rationale for not allowing an injunction in a letter of credit transaction when the only basis for an injunction is that the documents do not comply with the terms of the credit is a sound one. It is the issuer's duty to carefully review the documents to determine whether they comply. UCP, art. 5; I.C. 26–1–5–109(2). An issuer which wrongfully honors a non-conforming documentary draft breaches a duty owed to the customer and would not be entitled to reimbursement. *See,* I.C. 26–1–5–114(3) (authorizing reimbursement only when issuer "duly honors" a demand for payment.)

FOR OUR ACCOUNT, MATURITY DATE AUGUST 15, 1988

COVERING SHIPMENT OF THE FOLLOWING:

A. 1 (ONE) TRESFJORD ULTRA OF STANDARD SPEC. WITH SINGLE VOLVO PENTA AQAD 41 DP AND COMPLETE SET OF PATTERNS FOR FABRICATION OF PRODUCTION MOULDS FOR TRESFJORD ULTRA MODEL RANGE ... INCLUDING—HULL, DECK, INNER-LINER

LATEST DATE FOR PRESENTATION OF DOCUMENTS IS JULY 25, 1987. CREDIT AVAILABLE WITH FORRET-NINGSBANKEN A/S, TRONDHEIM FOR PAYMENT AND ACCEPTANCE AS SPECIFIED. SHIPMENT 'A' IS TO BE ACCOMPANIED BY THE FOLLOWING DOCUMENTS.

1. COMMERCIAL INVOICE IN FOUR COPIES DULY SIGNED INDICATING THE 'FREE ON TRUCK' VALUE OF THE GOODS.

2. COMBINED THROUGH BILL OF LADING IN TWO ORIGINALS AND TWO COPIES ISSUED TO OUR ORDER. NOTIFY ALL SEASON INDUSTRIES, INC., 180 LOGAN STREET, MARKLE, INDIANA AND MARKED 'FREIGHT PAYABLE AT DESTINATION.'

3. CERTIFICATE OF ORIGIN IN DUPLICATE. ONE LEGALIZED BY APPROPRIATE AUTHORITY INDICATING THAT THE GOODS ARE OF THE ORIGIN OF NORWAY.

4. COPY OF CABLE OR TELEFAX SENT TO BUYERS ON SHIPPING DATE INDICATING ALL NECESSARY SHIPPING DETAILS AS WELL AS COUNTERVALUE OF THE DISPATCHED GOODS.

FOR YOUR SIGHT PAYMENT YOU ARE AUTHORIZED TO REIMBURSE YOURSELVES ON HARRIS BANK INTERNATIONAL CORP., NEW YORK, FOR THE ACCOUNT OF HARRIS TRUST BANK, CHICAGO, ILLINOIS, FOR THE ACCOUNT OF SUMMIT BANK, FORT WAYNE, INDIANA, THREE WORKING DAYS AFTER RECEIPT BY US OF YOUR TESTED TELEX MESSAGE CONFIRMING THAT YOU HOLD SHIPPING DOCUMENTS IN CONFORMITY WITH L/C TERMS. FOR THE TWO DRAFTS FOR USD 50,000.00 EACH YOU ARE AUTHORIZED TO REIMBURSE YOURSELVES ON HARRIS BANK INTERNATIONAL CORP., NEW YORK, FOR THE ACCOUNT OF HARRIS BANK, CHICAGO, ILLINOIS, FOR THE ACCOUNT OF SUMMIT BANK, FORT WAYNE, INDIANA AT THE RESPECTIVE MATURITY DATES, WITHOUT ANY NOTIFICATIONS TO US.

SECOND SHIPMENT WILL COVER THE FOLLOWING:

B. COMPLETE SET OF PATTERNS FOR FABRICATION OF PRODUCTION MOULDS FOR TRESFJORD ULTRA MODEL RANGE. INCLUDING: FLYBRIDGE, SUNBRIDGE, BRIDGE LINERS, CABIN LINER, BOWSPIT, SWIMPLATFORM, HATCHES AND ENGINE MOUNTS ALL AVAILABLE TECHNICAL DRAWINGS AND DIAGRAMS–ALL AVAILABLE DOCUMENTATION ON PRODUCTION JIGS AND FIXTURES.

SHIPMENT 'B' IS TO BE SHIPPED NOT LATER THAN SEPTEMBER 15, 1987. PARTIAL SHIPMENTS ARE ALLOWED. PLACE OF EXPIRY–TRONDHEIM, SEPTEMBER 25, 1987. REQUIRED DOCUMENTS TO BE RELEASED DIRECTLY TO ALL SEASON INDUSTRIES, INC. OR THEIR DESIGNEE.

ALL DRAFTS MUST BE MARKED 'DRAWN UNDER SUMMIT BANK, FORT WAYNE, INDIANA LETTER OF CREDIT NO. 1315' AND THE AMOUNT ENDORSED ON THIS LETTER OF CREDIT.

GOODS DELIVERED 'FREE ON TRUCK.' SHIPMENT FROM NORWEGIAN OR SWEDISH PORT. DESTINATION BALTIMORE, MARYLAND. INSURANCE TO BE COVERED BY APPLICANT.

EXCEPT AS OTHERWISE EXPRESSLY STATED HEREIN, THIS CREDIT IS SUBJECT TO THE UNIFORM CUSTOMS & PRACTICE FOR DOCUMENTARY

CREDITS (1983 REVISION) INTERNATIONAL CHAMBER OF COMMERCE. PUBLICATION NO 400.

ALL BANK CHARGES OUTSIDE UNITED STATES UNDER THIS LETTER OF CREDIT ARE FOR THE ACCOUNT OF THE BENEFICIARY.

THE VALIDITY OF THIS LETTER OF CREDIT IS SUBJECT TO THE ISSUANCE OF A STANDBY LETTER OF CREDIT IN FAVOR OF ALL SEASON INDUSTRIES, INC., IN THE AMOUNT OF 30,000.00 USD. COVERING SHIPMENT 'B' SHOWN ABOVE. SENT TO SUMMIT BANK, FORT WAYNE, INDIANA BY TESTED TELEX.

REGARDS"