**MERCHO–ROUSHDI–SHOEMAKER–DILLEY THORACO–VASCULAR CORPORATION, Appellant–Defendant,**

v.

**James W. BLATCHFORD, III, M.D., and Eve G. Cieutat, M.D., Appellees–Plaintiffs.**

No. 84A01–0801–CV–30.

Court of Appeals of Indiana.

Feb. 5, 2009.

Robert A. Garelick, Steven M. Crell, Heather Wysong Zaiger, Cohen Garelick & Glazier, Indianapolis, IN, Attorneys for Appellant.

John J. Morse, Morse Foushee, P.C., Indianapolis, IN, Attorney for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant/Cross–Appellee–Defendant/Counter–Plaintiff, Mercho–Roushdi–Shoemaker–Dilley Thoraco–Vascular Corporation (MRSD), appeals from the trial court's summary judgment ruling that the non-compete clauses signed by Appellees/Cross–Appellants–Plaintiffs/Counter–Defendants, James W. Blatchford, III, M.D. (Blatchford) and Eve G. Cieutat, M.D. (Cieutat), are unenforceable. Blatchford and Cieutat cross-appeal, arguing that the trial court erred in granting summary judgment in favor of MRSD on Counts I–VII of Blatchford and Cieutat's Complaint.

We affirm.[1]

### ISSUES

MRSD raises several issues on appeal, which we restate as the following single issue:

(1) Whether the trial court erred in granting summary judgment in favor of Blatchford and Cieutat with regard to the enforceability of the non-compete clauses.

Blatchford and Cieutat raise several issues on cross-appeal, which we restate as the following single issue:

(2) Whether the trial court erred in granting summary judgment in favor of MRSD on Counts I–VII of Blatchford and Cieutat's Complaint.

### FACTS AND PROCEDURAL HISTORY

We stated the following facts in an earlier appeal in this case:

MRSD is a physician group practice incorporated in Indiana providing cardiovascular medical services in Indianapolis and Terre Haute. MRSD employs an administrative staff, surgeons, nurses, and perfusionists to provide cardiovascular surgical teams at Union Hospital and Terre Haute Regional Hospital ("Regional Hospital"). MRSD is the sole provider of cardiovascular surgical services in Vigo County.

Doctors John P. Mercho ("Dr.Mercho") and Hussein A. Roushdi ("Dr.Roushdi") are founding shareholders. Doctors Robert E. Shoemaker ("Dr.Shoemaker"), Russell S. Dilley ("[Dr.] Dilley"), Dennis M. Jacob ("Dr.Jacob"), and David K. Evans ("Dr.Evans") are the remaining shareholders. All are physicians licensed to practice medicine in Indiana. The Articles of Incorporation provide for two classes of stock: (1) class A voting shares and (2) class B non-voting shares. Drs. Mercho and Roushdi each own 200 shares of class A voting stock and 100 shares of class B non-voting stock; the other doctors each own 25 shares of class A voting stock and 100 shares of class B non-voting stock.

Doctors Blatchford and Cieutat are married and are also licensed to practice medicine in Indiana. They are surgeons specializing in thoracic, vascular, and cardiovascular surgery. Drs. Blatchford

---

1. We held oral argument in this case during a meeting of the Rotary Club of Indianapolis on November 4, 2008. We thank the Rotary Club for its hospitality and counsel for their presentations.

and Cieutat were recruited by MRSD. On November 7, 1994, both signed employment agreements with MRSD. Prior to signing the agreements, the doctors had no ties to Indiana or MRSD. The agreements were subject to the "Indiana Medical Professional Corporation Act and the applicable rules of professional ethics." They specifically addressed the procedure for terminating employment, employee covenants, and a conditional option for stock purchase.

For example, MRSD was required to give ninety (90) days written notice before terminating an employment agreement. No notice was required if either Drs. Blatchford or Cieutat lost their medical license, was suspended from practicing medicine, or suffered death or total disability. If the doctors wished to terminate the agreement, written notice of 180 days was required. Further, the employment agreements also contained a covenant of loyalty and non-competition clause. Finally, the agreements provided a conditional option to purchase shares after the completion of three and one-half years of employment.

During their employment, Drs. Blatchford and Cieutat resided and rendered surgical services primarily in Vigo County. The doctors expected to become shareholders in MRSD during the summer of 1998. When their expectations were not met, Drs. Blatchford and Cieutat met with various other doctors and Jerry Dooley, the chief operating officer of Regional Hospital. Drs. Blatchford and Cieutat stated that they did not believe they would become partners at MRSD and discussed whether it would be feasible to establish their own cardiovascular practice. During November 1998 and without notice to Drs. Blatchford and Cieutat, MRSD added Doctor Nabil Mnayarji ("Dr.Mnayarji") to the Terre Haute practice, and, in December 1998, Drs. Blatchford and Cieutat incorporated an entity named Cardiothoracic Surgical Associates of Wabash Valley ("CSA").

In January 1999, Drs. Blatchford and Cieutat began negotiating a partnership agreement with MRSD. On January 22, 1999, the doctors signed an Amended and Restated Stock Transfer Agreement retroactive to June 15, 1998, making them partners in MRSD. Drs. Blatchford and Cieutat purchased 25 shares of class A voting stock and 100 shares of class B non-voting stock. They were also elected and qualified to serve on MRSD's board of directors. The stock purchase agreement also contained a non-competition clause. The relevant portion reads as follows:

(c) For a period of three (3) years after a Shareholder ceases to be a Shareholder, no shareholder shall engage directly or indirectly, in the rendition of thoracic, vascular or cardiovascular surgical services within the two (2) areas contained in circles drawn within a radius of fifty (50) miles of the center of Monument Circle in Indianapolis, Indiana and of the center of the Court House of Terre Haute, Indiana. Each Shareholder specifically acknowledges and confirms that the foregoing provisions of this paragraph 9 relating to the three (3) year period following the date any Shareholder ceases to own stock in the Corporation are reasonable, both in geographic area and in scope and are necessary in order to protect the business of the Corporation. Each Shareholder further acknowledges and confirms that such provisions are equitable since, in the event of such termination, he would not be restricted from practicing thoracic cardiovascular surgical services outside of such

geographic areas. In addition, each Shareholder agrees that the foregoing provisions of this paragraph 9 may be enforced in accordance with the provisions of paragraph 11 hereof [granting MRSD the right to seek injunctive relief to prevent a breach of the purchase agreement].

On January 22, 1999, they also signed new employment agreements. The new agreements were also subject to "the Indiana Medical Professional Corporation Act and the applicable rules of professional ethics, . . . ." While the Agreements remained substantially unchanged, there were changes in the salary, termination, and employee covenant provisions. As partners and directors, the doctors would now share in MRSD's profits. Termination of the employment agreement by either party now required only a written 30 day notice for Dr. Blatchford and a written 60 day notice for Dr. Cieutat. The relevant portion of the non-competition clause provision read as follows:

(iii) For a period of three (3) years after termination of this Agreement, the Employee shall not engage directly or indirectly, in the rendition of thoracic, vascular or cardiovascular surgical services within the two (2) areas contained in circles drawn with a radius of fifty (50) miles of the center of Monument Circle in Indianapolis, Indiana and of the center of the Court House of Terre Haute, Indiana. In addition to the geographic areas set forth in the preceding sentence, if during the term hereof the Corporation shall establish a medical practice in Vincennes, Indiana, for a period of three (3) years after the termination of this Agreement, Employee shall not engage directly or indirectly in the rendition of thoracic, vascular or cardiovascular surgical services within

an area contained in a circle drawn with a radius of fifty (50) miles of the center of the Court House of Vincennes, Indiana. The Employee specifically acknowledges and confirms that the foregoing provisions of this paragraph 8 relating to the three (3) year period following the termination of the Employee's employment with the Corporation are reasonable, both in geographic area and in scope and are necessary to protect the business of the Corporation. The Employee further acknowledges and confirms that such provisions are equitable since, in the event of such termination, [he or she] would not be restricted from practicing thoracic cardiovascular surgical services outside of such geographic area. In addition, the Employee agrees that the foregoing provisions of this paragraph 8 may be enforced in accordance with the provisions of paragraph 10 hereof [granting MRSD the right to seek injunctive relief to prevent a breach of the employment agreement].

Subsequently, the relationship between Drs. Blatchford, Cieutat, and Dr. Mnayarji became hostile. On several occasions, Dr. Blatchford referred to Dr. Mnayarji as "Satan," and the parties took extraordinary steps to avoid each other. Drs. Blatchford and Cieutat felt that Dr. Mnayarji rendered medical services that were below an acceptable standard of care.

On November 1, 1999, an unauthorized "executive committee" composed of Drs. Mercho, Roushdi, Shoemaker, and Dilley met to discuss the employment status of Dr. Blatchford. They took a vote and drafted a letter terminating Dr. Blatchford's employment and salary benefits effective December 1, 1999. The letter stated that MRSD would hon-

or the terms of the Agreement and hoped that Dr. Blatchford would honor the employment covenants.

On December 2, 1999, Dr. Cieutat submitted her letter of resignation to MRSD. The letter stated that she was resigning because MRSD had repeatedly refused to address the quality of care issues surrounding Dr. Mnayarji and that its failure would cause her continued employment to violate the rules of professional ethics. Currently, Drs. Blatchford and Cieutat provide cardiovascular surgical services in Terre Haute through CSA.

*Mercho–Roushdi–Shoemaker–Dilley Thoraco–Vascular Corp. v. Blatchford,* 742 N.E.2d 519, 521–23 (Ind.Ct.App.2001) (citations and footnotes omitted).

On December 2, 1999, Blatchford and Cieutat filed a nine-count Complaint against MRSD and Mercho, Roushdi, Shoemaker, Dilley, Jacob, and Evans, individually. In Count I, they alleged that the other directors committed dereliction and waste with regard to their hiring and management of Mnayarji. In Count II, they claimed that the other directors committed dereliction and waste with regard to their dealings with Mercho. In Count III, they alleged other instances of dereliction and waste by the other directors. In Count IV, they asserted dereliction and waste by Mercho in his role as president of MRSD. In Count V, they claimed that MRSD had wrongfully terminated Blatchford. In Count VI, they asserted that their fellow shareholders and directors had breached their fiduciary duties to Blatchford and Cieutat. In Count VII, they alleged that MRSD had breached the parties' various contracts. In Count VIII,[2] they sought a declaratory judgment that the non-compete clause in the parties' stock agreements is unreasonably restrictive and against public policy, and therefore unenforceable. In Count IX, they sought the same relief with regard to the non-compete clause in the parties' employment agreements.

On December 7, 1999, MRSD, Mercho individually, and Mnayarji filed their Answer, Affirmative Defenses and Counterclaim and a motion for preliminary injunction hearing.[3] In Count I of the Counterclaim, MRSD claimed that Blatchford had breached his contracts with the corporation by failing to pay certain sums of money. In Count II, Mercho and Mnayarji alleged that Cieutat had defamed them. In Count III, MRSD asserted that Cieutat had breached her employment agreement with the corporation. In Count IV, MRSD claimed that Blatchford and CSA tortiously interfered with Cieutat's employment agreement with MRSD. In Count V, MRSD, Mercho, and Mnayarji sought punitive damages against Blatchford, Cieutat, and CSA. Finally, in Count VI, MRSD, Mercho, and Mnayarji sought a preliminary injunction prohibiting Blatchford and Cieutat from competing against MRSD, pursuant to the non-compete clauses.

On July 12, 2000, the trial court denied MRSD's motion for preliminary injunction, finding that the non-compete clauses were unenforceable. MRSD brought an interlocutory appeal, and we affirmed. *Id.* at 526.

**2.** Count VIII was mistakenly labeled as a second Count VII in Blatchford and Cieutat's Complaint.

**3.** Even though Mnayarji was not named as a defendant in Blatchford and Cieutat's Complaint, Blatchford and Cieutat make no objection, at least in this appeal, to his treatment as a "counter-plaintiff" in the Answer, Affirmative Defenses and Counterclaim. (Appellant's App. p. 55).

The case returned to the trial court, and, on May 20, 2003, Blatchford and Cieutat filed a motion for summary judgment on Counts VI, VII, VIII, and IX of their own Complaint and on all of MRSD's counterclaims. As to Counts VIII and IX of their Complaint, regarding the enforceability of the non-compete clauses, Blatchford and Cieutat relied largely upon the trial court's earlier denial of MRSD's request for a preliminary injunction. On September 29, 2003, after apparently hearing oral arguments on the motion "in chambers," the trial court took the motion under advisement and ordered the case to mediation. (Appellant's App. pp. 403–04). Mediation was unsuccessful.

As of August 20, 2007, the trial court still had not ruled on Blatchford and Cieutat's motion, and MRSD filed its own motion for summary judgment with regard to Counts I–VII of Blatchford and Cieutat's Complaint. On December 3, 2007, the trial court held a brief hearing on MRSD's motion. During the hearing, counsel for Blatchford and Cieutat reiterated their own motion for summary judgment on Counts VIII and IX of their Complaint. On January 4, 2008, the trial court issued an order that provided:

> Defendants–Counter Claimants move for summary judgment as to Counts I through VII of Plaintiff's Complaint. The Court will not here reiterate the various reasons contained in the arguments as to each Count except to say that Defendant–Counter Claimants' argument[s] are meritorious and there are no substantial issues of fact material to the allegations of those counts. Defendant's—Counter-claimant's Motion for Summary Judgment as to Counts I through VII of Plaintiff's Complaint is Granted and Judgment is entered accordingly.
>
> Plaintiff's [sic] moved orally at hearing for summary judgment in their favor of Counts VIII and IX of their complaint alleging that there are no material issues of fact and that the non-compete clause is unenforceable as contrary to public policy. This issue has been briefed and argued extensively in this case. The Court finds that the Plaintiff's arguments are meritorious and Plaintiff's Motion for Summary Judgment as to Counts VIII and IX is GRANTED and Judgment is entered accordingly.
>
> The Court having ruled on Counts VIII and IX as indicated above, Counterclaimants complaint is MOOT and thus Dismissed and Judgment is entered in favor of Counter–Defendants.

(Appellant's App. pp. 7–8).

MRSD appeals, and Blatchford and Cieutat cross-appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

On appeal, MRSD contends that the trial court erred in granting summary judgment in favor of Blatchford and Cieutat with regard to the enforceability of the non-compete clauses.[4] Blatchford and Cieutat cross-appeal, arguing that the trial court erred in granting summary judgment in favor of MRSD on Counts I–VII of Blatchford and Cieutat's Complaint.

In reviewing summary judgment rulings, we apply the same standard as the trial court. *Kopczynski v. Barger*, 887

---

4. Because the non-compete clauses expired in 2002, injunctive relief is no longer a possibility and is no longer at issue. In fact, during the 2007 summary judgment hearing, MRSD's attorney informed the trial court that Blatchford and Cieutat had moved to Alabama. Nonetheless, MRSD still seeks to recover money damages for Blatchford and Cieutat's alleged breach of the clauses, so the issues presented are not moot.

N.E.2d 928, 930 (Ind.2008). We affirm summary judgment unless there is a genuine issue as to a material fact or the moving party is not entitled to a judgment as a matter of law. *Id.* All facts and reasonable inferences from them are to be construed in favor of the nonmoving party. Id. We turn first to MRSD's appeal.

## I. *MRSD's Appeal: Enforceability of the Non–Compete Clauses*

MRSD presents two challenges to the trial court's grant of summary judgment in favor of Blatchford and Cieutat regarding the enforceability of the non-compete clauses, one procedural and one substantive.

### A. *Summary Judgment Procedure*

As a preliminary matter, MRSD argues that we should reverse the trial court's grant of summary judgment in favor of Blatchford and Cieutat as to the enforceability of the non-competition provisions because the trial court failed to apply the appropriate legal standard. More specifically, MRSD asserts that the trial court violated the principle that a grant of summary judgment may be based only on material specifically designated to the trial court. *See Kashman v. Haas,* 766 N.E.2d 417, 420 (Ind.Ct.App.2002). MRSD contends that the trial court violated that principle in two regards.

#### 1. *Designated Evidence*

■ First, MRSD claims that when the trial court granted summary judgment in favor of Blatchford and Cieutat with regard to the enforceability of the non-compete clauses, "it did so without either party designating any new evidence or other matters in support or in opposition to the oral motion." (Appellant's Br. p. 23). In its order, the trial court wrote that Blatchford and Cieutat "moved orally at hearing for summary judgment in their favor of Counts VIII and IX of their complaint," which counts sought declaratory judg-

ments that the non-compete clauses are unenforceable. (Appellant's App. p. 8). MRSD's concern is that the trial court granted summary judgment on Counts VIII and IX of Blatchford and Cieutat's Complaint without considering the evidence that was designated when Blatchford and Cieutat originally moved for summary judgment on Counts VIII and IX in 2003. MRSD may be correct. The trial court's statement that Blatchford and Cieutat "moved orally at hearing for summary judgment in their favor of Counts VIII and IX of their complaint" could imply that the trial court failed to consider the evidence that was designated by both parties in relation to Blatchford and Cieutat's original written motion in 2003. But even if that is true, it does not affect our review on appeal. As noted above, in reviewing summary judgment rulings, we apply the same standard as the trial court. *Kopczynski,* 887 N.E.2d at 930. We have before us all of the evidence that the parties designated back in 2003. We can review it even if the trial court did not.

To the extent that MRSD complains that it was not able to designate any "new" evidence before the trial court granted summary judgment based on an "oral motion," it is out of luck. On August 29, 2003, in response to Blatchford and Cieutat's motion for summary judgment, MRSD designated 267 pages of Material Issues of Fact and Evidence. (*See* Appellant's App. pp. 119–385). On September 29, 2003, the trial court took Blatchford and Cieutat's motion under advisement. MRSD then had more than four years before the December 3, 2007, summary judgment hearing to attempt to submit additional evidence in its favor. MRSD cannot now be heard to complain that it did not have an opportunity to designate "new" evidence.

## 2. *Reliance on Preliminary Injunction Findings of Fact and Conclusions of Law*

■ MRSD next contends:

Even if the trial court is deemed to have looked back to Blatchford and Cieutat's 2003 motion for summary judgment and MRSD's response thereto concerning the enforceability of the non-compete clauses, Blatchford and Cieutat's support for summary judgment in their favor was based primarily on the trial court's findings of fact and conclusions of law on MRSD's motion for preliminary injunction, which they claimed were conclusive on the issue of enforceability.

(Appellant's Br. p. 26). In denying MRSD's motion for a preliminary injunction, the trial court found, in part, that "[t]he Non–Competes are overly broad, and thus void and unenforceable[.]" (Appellant's App. p. 74). To the extent that the trial court felt that it was bound by its earlier conclusion and believed that MRSD should not be allowed to further litigate the issue, it was mistaken. Findings and conclusions made at the preliminary injunction phase are not binding in subsequent phases of litigation. *See Cement–Masonry Workers Union, Local No. 101 v. Ralph M. Williams Enters.*, 169 Ind.App. 647, 648, 350 N.E.2d 656, 657 (1976); *see also All Season Indus., Inc. v. Tresfjord Boats A/S*, 563 N.E.2d 174, 178 (Ind.Ct. App.1990). Our supreme court, in reviewing the grant of a temporary injunction, has stated, "The question for the court upon the interlocutory application is not the final merits of the case. When the cause comes to be heard, the final merits may be very different." *Tuf–Tread Corp. v. Kilborn*, 202 Ind. 154, 172 N.E. 353, 354 (1930). In other words, a preliminary injunction proceeding is exactly that: preliminary.

That being said, MRSD points to nothing that would indicate that the trial court granted summary judgment in favor of Blatchford and Cieutat based on its earlier preliminary injunction findings and conclusions. And even if it did, that does not affect our review on appeal. Again, the standard of review of a summary judgment ruling is the same as that used in the trial court. *Kopczynski*, 887 N.E.2d at 930. We will review the designated evidence to determine whether there are any genuine issues of material fact and whether the moving party is entitled to a judgment as a matter of law. *See id.*

## B. *Merits of Summary Judgment*

Next, MRSD argues that, considering the properly designated evidence, summary judgment in favor of Blatchford and Cieutat with regard to the enforceability of the non-compete clauses is inappropriate. When dealing with non-competition agreements in employment contracts, there are two competing policies at play: freedom of contract and freedom of trade. On one hand, our supreme court has said that "it is to the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract[.]" *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 279 (Ind.1983) (quoting *Hodnick v. Fid. Trust Co.*, 96 Ind.App. 342, 350, 183 N.E. 488, 491 (1932)). On the other hand, the court has more recently stated that "noncompetition covenants in employment contracts are in restraint of trade and disfavored by law" and will be construed strictly against the employer. *Central Indiana Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 728–29 (Ind.2008). Referring specifically to non-competition agreements between physicians and medical practice groups, the court said:

Noncompetition agreements are justified because they protect the investment and good will of the employer. In many

businesses, the enforceability of a non-competition agreement affects only the interests of the employee and the employer. A noncompetition agreement by a physician involves other considerations as well. Unlike customers of many businesses, patients typically come to the physician's office and have direct contact with the physician. If an agreement forces a physician to relocate outside the geographic area of the physician's practice, the patients' legitimate interest in selecting the physician of their choice is impaired.

Moreover, the confidence of a patient in the physician is typically an important factor in the relationship that relocation would displace. In both respects physicians are unlike employees in many businesses. The legal framework applicable to these relationships needs to take these differences into account.

*Id.* at 727. In short, non-competition agreements by physicians "should be given particularly careful scrutiny." *Id.* at 729.

■■■ To be enforceable, a noncompetition agreement must be reasonable. *Id.* Unlike reasonableness in many other contexts, the reasonableness of a noncompetition agreement is a question of law. *Id.* In considering what is reasonable, regard must be paid to three factors: (1) whether the agreement is wider than necessary for the protection of the employer in some legitimate interest; (2) the effect of the agreement upon the employee; and (3) the effect of the agreement upon the public. *See Medical Specialists, Inc. v. Sleweon,* 652 N.E.2d 517, 522 (Ind.Ct.App.1995), *trans. denied.* We examine each factor in turn.

**1.**

■■■ In arguing the reasonableness of a non-competition agreement, the employer must first show that it has a legitimate interest to be protected by the agreement. *Krueger,* 882 N.E.2d at 729. MRSD argues that the legitimate interest to be protected is the "great effort, money and time" that it expended in "opening and expanding open heart programs in Terre Haute." (Appellant's Br. p. 30). Blatchford and Cieutat fail to mount a meaningful attack on this claim, and rightfully so. In *Harris v. Primus,* 450 N.E.2d 80, 85 (Ind.Ct.App.1983), we held:

> The members of the Clinic who spent years and money developing the Clinic had a legitimate and realistic desire to protect not only their investment in Dr. Primus but also to restrict her competition with them once she left the Clinic. They have a protectable interest in enforcing the covenant against Dr. Primus[.]

Here, MRSD presented evidence that it spent eight years and several million dollars establishing its practice in Terre Haute before bringing Blatchford and Cieutat in from out of state. As such, it has a legitimate interest to be protected.

■■■ The employer also bears the burden of establishing that the agreement is reasonable in scope as to the time, activity, and geographic area restricted. *Krueger,* 882 N.E.2d at 729. MRSD dedicates four pages of its brief to the argument that the three-year and fifty-mile restrictions imposed by the non-competition agreements in this case are reasonable, citing multiple cases and several portions of the record on appeal. Blatchford and Cieutat make a fleeting argument, lacking citation to authority or the record, that the agreements are wider than necessary in terms of time and geography.[5] As

---

**5.** Blatchford and Cieutat do direct us to the trial court's conclusion at the preliminary in-junction phase that the geographic and temporal restrictions are "extreme and unwar-

such, we hold in favor of MRSD with regard to this factor.

### 2.

■■■ We must also consider the effect of the non-compete clauses on Blatchford and Cieutat. *See Sleweon,* 652 N.E.2d at 522. Blatchford and Cieutat make another passing argument that enforcement of the agreements would have adversely affected their ability to make a living, again without citation to authority or the record. (*See* Appellees' Br. p. 14). We cannot say that the non-compete clauses were unreasonable in this regard.

### 3.

The brunt of Blatchford and Cieutat's argument focuses on the third consideration: the effect that enforcement of the non-compete clauses would have had upon the public. *Sleweon,* 652 N.E.2d at 522. In *Raymundo,* our supreme court was asked to hold that a non-competition agreement between a physician and a medical clinic was "inimical to the public interest and unenforceable as a matter of public policy[.]" 449 N.E.2d at 279. The court quoted the following passage from our opinion in *Hodnick,* 96 Ind.App. at 350, 183 N.E. at 491:

> In the absence of a showing that any particular contract brought before the court is contrary to what the constitution, the legislature or the judiciary have declared to be public policy, it is necessary in order to have the court hold it void on the ground of public policy, to show clearly that such contract has a

tendency to injure the public, or is against the public good or is inconsistent with sound policy and good morals as to the consideration or as to the thing to be done or not to be done. Whether or not a contract is against public policy is a question of law for the court to determine from all of the circumstances in a particular case. The courts will keep in mind the principle that it is to the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract and that their agreements are not to be held void as against public policy, unless they are clearly contrary to what the constitution, the legislature, or the judiciary have declared to be the public policy or unless they clearly tend to the injury of the public in some way.

*Raymundo,* 449 N.E.2d at 279.

■■■ Blatchford and Cieutat urge that enforcement of the non-competition agreements in this case would have had a negative impact on the public because of the lack of suitable alternatives for heart surgery in the Terre Haute area. They point to a wealth of evidence supporting their position:

- Dr. Barry Long, a Terre Haute physician who has a dilated aorta, testified that his heart was subject to unpredictable ruptures, and that he would die if a rupture were to occur and he could not obtain immediate care from Blatchford. Dr. Long also stated that Blatchford is uniquely qualified to render the care he would need in such

---

ranted." (Appellees' App. p. 20). However, as noted above, findings and conclusions made at the preliminary injunction phase are not binding in subsequent phases of litigation. *See Cement–Masonry Workers Union, Local No. 101,* 169 Ind.App. at 648, 350 N.E.2d at 657; *see also All Season Indus., Inc.,* 563 N.E.2d at 178. Moreover, to the extent that

Blatchford and Cieutat would have us treat the trial court's preliminary injunction conclusion as a summary judgment finding, we note that a trial court's findings on summary judgment, while helpful, are not binding on this court. *Porter Mem'l Hosp. v. Wozniak,* 680 N.E.2d 13, 15 (Ind.Ct.App.1997).

an emergency. (Appellees' App. pp. 227–33).

- Dr. Pradip Patel, a Terre Haute cardiologist, testified that patient care would be adversely affected if Blatchford and Cieutat were forced to leave Terre Haute. Dr. Patel also stated that Blatchford and Cieutat were the only surgeons in Terre Haute who could implant a left ventricular assist device—a type of artificial heart—and that they had actually saved the life of one of Dr. Patel's patients by doing so. Dr. Patel opined that Blatchford and Cieutat's skills in cardiovascular surgery were an important factor in the improvement of infection and mortality rates in Terre Haute. (Appellees' App. pp. 255–58).

- Dr. Alex Ton, a Terre Haute family doctor, testified via affidavit that Blatchford and Cieutat are the best trained cardiovascular surgeons in the Terre Haute area, that cardiovascular surgery in Terre Haute is clearly better than it was before Blatchford and Cieutat arrived, and that he would feel compelled to refer his patients to Indianapolis if Blatchford and Cieutat were not allowed to practice in Terre Haute, which would create the risk that very sick patients would not survive the delay in time. (Appellees' App. pp. 298–99).

- Dr. Emmanuel Favila, a Terre Haute cardiologist, testified via affidavit that Blatchford and Cieutat are the only physicians in the Terre Haute area trained and certified to insert a left ventricular assist device and that three patients in Terre Haute would have died without the device. Dr. Favila also stated that an extreme vacuum in care would be created if Blatchford and Cieutat were to leave Terre Haute. (Appellees' App. pp. 271–72).

- Dr. Jeffery Bilotta, a Terre Haute physician, testified via affidavit that many referring physicians in Terre Haute prefer Blatchford and Cieutat over other options for cardiovascular surgery in the Terre Haute area. As a result, if Blatchford and Cieutat were to leave, doctors would refer patients to Indianapolis, putting the patients' lives at risk. Dr. Bilotta also stated that infection, morbidity, and mortality rates dramatically improved after Blatchford and Cieutat arrived. (Appellees' App. pp. 262–63).

- Dr. John Bollinger, a Terre Haute internist, testified via affidavit that if Blatchford and Cieutat were to leave Terre Haute, he would not be comfortable keeping patients in need of cardiovascular surgery in the Terre Haute area and would transfer them to Indianapolis. Dr. Bollinger added that transfers to Indianapolis would be detrimental to patients because critically ill patients many times become too unstable to survive such a transfer. Also, such transfers create a huge inconvenience for patients' families. (Appellees' App. pp. 265–66).

- Dr. Curt Oehler, a Terre Haute cardiologist, testified via affidavit that if Blatchford and Cieutat were not allowed to practice in Terre Haute, there would be a shortage of cardiac surgeons that would result in delayed and decreased patient care, especially in emergency situations where the continued viability of patients' lives may be at risk. (Appellees' App. pp. 274–75).

The doctors above who testified via affidavit also stated that allowing Blatchford and Cieutat to remain in Terre Haute would be in patients' best interests, in part because:

Patients would have a choice of cardio-vascular surgeons and also be able to obtain an objective second opinion in possibly life-threatening situations. Also, in an emergency situation, the community would be assured of having available more than one local cardiovascular surgeon, which could alleviate potential health risks.

(Appellees' App. pp. 262, 265, 271–72, 274, 298).

■ MRSD had an opportunity to cite conflicting evidence in its reply brief on appeal, but it utterly failed to do so. Instead, it contends that the evidence relied upon by Blatchford and Cieutat, detailed above, was not designated to the trial court. MRSD is wrong. All of the evidence detailed above was designated to the trial court in support of Blatchford and Cieutat's 2003 motion for summary judgment. (*See* Appellant's App. p. 393).

MRSD also suggests that Blatchford and Cieutat's argument should fail because they did not designate the above evidence in support of their "oral motion for summary judgment." (Appellant's Reply Br. p. 7). However, as previously discussed, Blatchford and Cieutat did not actually make an "oral motion for summary judgment." Rather, at the 2007 hearing on MRSD's own motion, Blatchford and Cieutat merely reiterated their original 2003 motion, which the trial court still had not resolved. The fact that four years passed without much movement does not invalidate the original designation of evidence.

In sum, Blatchford and Cieutat cite the live or affidavit testimony of seven Terre Haute doctors who believe that enforcement of the non-competition agreements would have tended to injure the Terre Haute community. MRSD has failed to direct us to any conflicting evidence that it designated to the trial court. Because MRSD has not designated any evidence

contradicting Blatchford and Cieutat's own evidence that tends to show that enforcement of the non-compete clauses would have been contrary to public policy, we affirm the trial court's conclusion that the non-compete clauses are unenforceable.

## II. *Blatchford and Cieutat's Cross–Appeal*

■ On cross-appeal, Blatchford and Cieutat contend that the trial court erred in granting summary judgment in favor of MRSD on Counts I–VII of Blatchford and Cieutat's Complaint. They proceed from the assumption that the trial court granted summary judgment in MRSD's favor because it found that Blatchford and Cieutat had failed to present evidence of any damages they sustained. As such, they begin their cross-appeal with a general discussion of the damages they allegedly sustained. However, they make no attempt to attach those alleged damages to any of their seven specific claims, nor do they make any reference to the other (non-damages) elements of five of those claims: dereliction of duties and corporate waste (Counts I–IV) and breach of contract (Count VII). We will not fill in the gaps left by Blatchford and Cieutat as to those five counts. However, Blatchford and Cieutat did make specific arguments with regard to Count V (wrongful termination of Blatchford) and Count VI (breach of fiduciary duty).

### A. *Wrongful Termination*

■ Blatchford and Cieutat argue that the trial court erred by granting summary judgment in favor of MRSD on Blatchford and Cieutat's claim that Blatchford was wrongfully terminated. Essentially, they argue that Blatchford was terminated for improper reasons. But, as MRSD stresses, Indiana generally follows the employment at will doctrine, which permits both the employer and the em-

ployee to terminate the employment at any time for a good reason, bad reason, or no reason at all. *Meyers v. Meyers,* 861 N.E.2d 704, 706 (Ind.2007). This rule is subject to a few limited exceptions. *See id.* at 706–07 (discussing the exceptions). Blatchford and Cieutat do not contend, on appeal, that any of those exceptions apply in this case. Because Blatchford and Cieutat have failed to demonstrate that any of the exceptions to the employment at will doctrine apply in this case, we affirm the trial court's grant of summary judgment in favor of MRSD on Blatchford and Cieutat's claim that MRSD wrongfully terminated Blatchford.

### B. *Breach of Fiduciary Duty*

 Blatchford and Cieutat also contend that the trial court erred when it entered summary judgment in favor of their fellow shareholders on Blatchford and Cieutat's claim for breach of fiduciary duty. "Shareholders in a close corporation[6] stand in a fiduciary relationship to each other, and as such, must deal fairly, honestly, and openly with the corporation and with their fellow shareholders." *W & W Equipment Co. v. Mink,* 568 N.E.2d 564, 570 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* Blatchford and Cieutat contend that the other shareholders breached that duty in this case by forming an unauthorized "executive committee" and voting to terminate Blatchford's employment without asking or allowing Blatchford and Cieutat, as fellow shareholders, to participate. This may be true. But it is axiomatic that a plaintiff must prove damages in order to recover for a breach of fiduciary duty. And while Blatchford and Cieutat discuss at length the damages they generally suffered under

Counts I–VII of their Complaint, they fail to attach any specific damages to any specific claim, including the breach of fiduciary duty claim. For example, Blatchford and Cieutat contend that they are owed "return of their buy-ins and bonuses from the last year of the employment with MRSD," but they never attempt to show how those alleged damages were caused by the formation and activities of the "executive committee." (Appellees' Reply Br. p. 20). Without such a showing, we have no basis for reversing the trial court.

 Blatchford and Cieutat note that the trial court found that the other shareholders breached their fiduciary duties. We make two observations. First, that finding was made at the preliminary injunction phase. (*See* Appellant's App. p. 73). One last time, we reiterate that findings and conclusions made at the preliminary injunction phase are not binding in subsequent phases of litigation. *See Cement–Masonry Workers Union, Local No. 101,* 169 Ind.App. at 648, 350 N.E.2d at 657; *see also All Season Indus., Inc.,* 563 N.E.2d at 178. Second, a finding of breach is insufficient to support recovery for a claim of breach of fiduciary duty; the plaintiff must also present evidence of damages arising from that breach. Blatchford and Cieutat have not done so in this case. We affirm the trial court's grant of summary judgment in favor of the other shareholders on Blatchford and Cieutat's claim for breach of fiduciary duty.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in granting

---

6. "A close corporation is one which typically has relatively few shareholders and whose shares are not generally traded in the securities market." *W & W Equipment Co. v. Mink,* 568 N.E.2d 564, 570 (Ind.Ct.App.1991). MRSD does not dispute Blatchford and Cieutat's assertion that MRSD is a close corporation.

summary judgment in favor of Blatchford and Cieutat regarding the enforceability of the non-compete clauses, nor did the trial court err in granting summary judgment in favor of MRSD on Counts I–VII of Blatchford and Cieutat's Complaint.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.