ATTORNEYS FOR APPELLANT
Robert A. Garelick
Steven M. Crell
Heather Wysong Zaiger
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
John J. Morse
Indianapolis, Indiana



FILED
Dec 18 2009, 3:01 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 84A01-0801-CV-30

MERCHO-ROUSHDI-SHOEMAKER-DILLEY
THORACO-VASCULAR CORPORATION,

*Appellant (Defendant below),*

v.

JAMES W. BLATCHFORD, III, M.D., and
EVE G. CIEUTAT, M.D.,

*Appellees (Plaintiffs below).*

Appeal from the Vigo Superior Court, Division I, No. 84D01-9912-CP-1990
The Honorable Michael H. Eldred, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 84A01-0801-CV-30

**December 18, 2009**

**Shepard, Chief Justice, dissenting from the denial of transfer.**

An Indiana group of open-heart surgeons with facilities in Indianapolis and Terre Haute recruited a husband-wife team from Texas to provide more staff capacity at its Terre Haute operation. The parties negotiated rather elaborate, if ordinary, agreements that covered various

aspects of their business relationship, from stock purchase arrangements to dissolution procedures to noncompetition provisions.

When the Texas doctors decided several years later to set up a competing practice of their own in Terre Haute, they and their former associates sued each other in claim and counterclaim. In the first round of this litigation, the Court of Appeals affirmed denial of injunctive relief on grounds that an adequate remedy existed at law.

In this round, the Court of Appeals has held that enforcing the business agreements of physicians is contrary to public policy as harmful to patients. The facts here illuminate only the opposite.

**History of the Relationship**

Doctors Mercho, Roushdi, Shoemaker, and Dilley practiced open-heart surgery together through the corporation bearing their names (MRSD), which has operated in Indianapolis since 1972. In 1985, Terre Haute Regional Hospital approached Dr. Mercho to establish the first open-heart surgery program in Terre Haute. (Appellant's App. at 179.) MRSD then began a "grueling, lengthy, and costly process, without receipt of any compensation," to establish this program at both Regional and Union hospitals in Terre Haute. (Appellant's App. at 184, 179, 312–13.) Since 1986, MRSD has spent about $8 million on capital expenditures for the Terre Haute program. (Appellant's App. at 371.) It opened an office, hired a secretary, and developed relationships with referring physicians. (Appellant's App. at 184–85.) It operated for about eight years at a financial loss. (Appellant's App. at 126.)

In 1994, MRSD needed an additional physician in Terre Haute. MRSD hired both doctors Blatchford and Cieutat despite an inadequate volume of surgeries at the time, because the two of them wanted to practice together. (Appellant's App. at 195.)

2

Before MRSD recruited them to Terre Haute, the two doctors were living in Texas and had no connections in Indiana. (Appellant's App. at 186, 261–62.) MRSD introduced them to physicians, hospital administrators, and other personnel in the area. (Appellant's App. at 186, 262.) MRSD ensured Blatchford and Cieutat had available the equipment and staff necessary for their work, including doctors to cover for them when they vacationed together. (Appellant's App. at 262–64.)

Blatchford and Cieutat signed employment agreements when they joined MRSD in November 1994 and signed shareholder agreements when they became partners in January 1999. (Appellant's App. at 198–205, 207–14, 216–23, 225–32.) These agreements were substantially identical to agreements entered by other doctors with similar standing. They contained noncompetition covenants that prohibited Blatchford and Cieutat from rendering services in "thoracic, vascular, or cardiovascular" surgery within fifty miles of Indianapolis or Terre Haute for three years. (Appellant's App. at 202, 211, 220–21, 229–30.)

In 1998, while they were still negotiating to become partners and a year before they left MRSD, Blatchford and Cieutat formed Cardio-Thoracic Surgical Associates of Wabash Valley, LLC. (Appellant's App. at 258, 265–66, 377.) Blatchford and Cieutat spoke to some of MRSD's referral sources, including Regional Hospital's CEO, and explained that they were dissatisfied with the group and inquired whether they would refer patients to them if they left. (Appellant's App. at 265–66, 271–74, 378–80.) The new LLC remained dormant until December 1999 (although it apparently had obtained office space), when MRSD terminated Blatchford and Cieutat resigned.

Within a month of leaving MRSD, Blatchford and Cieutat had performed eighteen to twenty cardiac surgeries at Regional and Union hospitals. (Appellant's App. at 282–83.) In the first three months of 2000, MRSD's Terre Haute operations earned $173,513.44 less than the same period of 1999, meaning its business had been cut almost in half. (Appellant's App. at 351–52.)

## First Round of Litigation

Shortly after their departure, Blatchford and Cieutat sued MRSD on nine counts, and MRSD countersued on six additional counts, including a request for a preliminary injunction requiring Blatchford and Cieutat to refrain from violating the noncompetition clauses of their agreements and from making any future defamatory statements. (Appellant's App. at 63–65.) The trial court denied this injunction on July 12, 2000, concluding that MRSD failed to show it was likely to succeed on the merits "because the Non-Competes are void and unenforceable . . . , have no irreparable harm, and have an adequate remedy at law for their alleged injuries." (Appellant's App. at 77.)

In concluding that the noncompetition clauses are void and unenforceable, the trial court found that they "are overly-broad," their geographical restrictions are "extreme and unwarranted," and their time restrictions are "extreme." (Appellant's App. at 74.) It also stated:

> Regardless of fault in the breakdown of the professional relationship between MRSD and Drs. Blatchford and Cieutat, it would be unfair and inequitable to require the Doctors to uproot themselves and abandon the commitment, personally and professionally, they have invested in this community. MRSD brought them here in 1994 to live here and establish a practice in this Community; which they did. Now MRSD urges this Court to order Blatchford and Cieutat to leave this Community and their practice and reestablish themselves, essentially, outside of Central Indiana and Illinois.

(Appellant's App. at 76.)

MRSD appealed the trial court's denial of the injunction, and the Court of Appeals affirmed. Mercho-Roushdi-Shoemaker-Dilley Thoraco-Vascular Corporation v. Blatchford, 742 N.E.2d 519 (Ind. Ct. App. 2001). It based its conclusion on a single ground, that MRSD had failed "to show its remedy at law would be inadequate, causing irreparable harm," and did not examine the three remaining factors required for a preliminary injunction. Id. at 526. During

4

these proceedings, Blatchford and Cieutat argued, and the court agreed, "that the evidence shows that the alleged damage suffered by MRSD can be calculated as an economic loss." Id. at 525.

**Litigating the Business Arrangements**

Having succeeded regarding the preliminary injunction, Blatchford and Cieutat filed a motion for summary judgment on Counts VI, VII, VIII, and IX of their complaint and on all of MRSD's remaining counterclaims on May 20, 2003. (Appellant's App. at 78–81.) As to the noncompetition clauses, this motion relied entirely on the trial court's denial of a preliminary injunction for its argument. (Appellant's App. at 79.)

After an unsuccessful attempt at mediation, this motion remained pending more than four years after its filing. MRSD then filed its own motion for summary judgment with regard to all of Blatchford and Cieutat's counts except two that addressed the noncompetition agreements. (Appellant's App. at 417–69.) At a brief hearing on MRSD's motion, Blatchford and Cieutat orally renewed their own motion for summary judgment. Referring to this, the trial court stated that plaintiffs "moved orally at hearing for summary judgment," and granted both motions without stating its reasons beyond that each of the respective prevailing party's "arguments are meritorious." (Appellant's App. at 8.) It concluded its order by declaring MRSD's counter-complaint was moot and thus dismissed. It then entered judgment in favor of Blatchford and Cieutat on the remaining counts. (Appellant's App. at 8.) The effect of all this was to terminate all the contractual and common law claims of all the parties.

The Court of Appeals held in favor of MRSD as to the reasonableness of the agreements' time, activity, and geographical restrictions. Mercho-Roushdi-Shoemaker-Dilley Thoraco-Vascular Corp. v. Blatchford & Cieutat, 900 N.E.2d 786, 796–98 (Ind. Ct. App. 2009) (MRSD II). The Court of Appeals affirmed based solely on the public interest prong of noncompetition agreement evaluation.

5

Blatchford and Cieutat do not challenge the reasonableness of the agreements' time and geographical restrictions. Instead, they have resisted the claims for money damages based on the agreements and common law by pointing to affidavits from referring doctors who testified that Terre Haute patients would suffer if Blatchford and Cieutat left. These doctors testified that people would die without Blatchford in Terre Haute, that Blatchford and Cieutat were the best cardiovascular surgeons in Terre Haute, that it would be very difficult to recruit doctors with their level of training to the area, and that there would be a shortage of capable doctors if they left. (Appellee's App. at 230, 262–63, 265–66, 271–72, 274–75, 298.)

This is an odd argument about patient needs coming as it does from two doctors who began their work in Terre Haute only because MRSD recruited them there and who have subsequently abandoned their Terre Haute patients to practice in another state.

Blatchford and Cieutat had no Indiana connections and, apparently, no intentions to relocate to the state, let alone Terre Haute. MRSD sought Blatchford to lead its newly developed operations in Terre Haute and lured him with a competitive compensation package that included a position for his wife. As part of this bargain, Blatchford and Cieutat agreed to terms that would essentially protect MRSD's substantial investment in building its practice in Terre Haute.

This Court has continued to hold that business arrangements among physicians, though requiring "particularly careful scrutiny," are not necessarily invalid. See Cent. Indiana Podiatry, P.C. v. Krueger, 882 N.E.2d 723, 728–29 (Ind. 2008); Raymundo v. Hammond Clinic Ass'n, 449 N.E.2d 276 (Ind. 1983).

Suits involving such noncompetition agreements are more about money than they are about anything else. Medical services undeniably represent an essential part of a community's life, but doctors make business decisions based on their own business interests, just as other professionals do. While it is appropriate to treat employment agreements involving doctors with

special care, failure to enforce at law the business agreements among doctors will mean <u>fewer</u> doctors available to patients, not more.

It requires no stretch of the imagination to realize that MRSD would never have sought doctors with absolutely no local connections and therefore no existing relationships with referring surgeons without enforceable business arrangements. Likewise, Blatchford and Cieutat would almost certainly not have ventured to begin a practice in Terre Haute without the kind of advance work, investment, and referral base MRSD provided them.

At this point in the litigation, the issue is who owes money for the parties' claims that each breached their contracts. The Court of Appeals opinion resolves this question by citing to the evidence offered by the departing doctors to resist the request for an injunction barring them from practicing their trade. <u>MRSD II</u>, 900 N.E.2d at 799. This muddles the caselaw of the medical business. If the doctors were to be required to pay the partnership that recruited them to Terre Haute, their patients would not be adversely affected, let alone die or be forced to travel to Indianapolis (as they used to do before MRSD invested $8 million in opening the practice in Terre Haute).

This case illustrates why non-enforcement of such agreements has the potential to detract from the public interest. Denying damages to a practice seeking to enforce its business arrangements detracts from the very public interests that this Court's decisions aim to protect— patient access to medical care.

I think patients (and doctors) would be well served by vacating the Court of Appeals' declaration that business arrangements between physicians are not enforceable.

Dickson, J., joins.